IN THE UNITED STATES DISTICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2004 DEC 30  A 9: 54

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

WANDA DENISE AYERS,    )
                       )
        Plaintiff,     )
          vs.          )        CIVIL ACION NO.
                       )        3.04CV1002-T
WAL-MART STORES EAST, LP )
                       )
        Defendant.     )
                       )

OPPOSITION TO ANSWER TO AMENDED COMPLAINT

Plaintiff will identify ('Wal-Mart") as so preferred as stated in the Answer to Amended
Complaint as Wal-Mart Stores East, LP in the following Opposition to Amended
Complaint Response:

   **a. Wal-Mart denies that it violated the statutes and regulations cited in
Paragraph (a) or any other laws. Wal-Mart further denies that 29 C.F.R 1614.405 is
applicable to Wal-Mart.**

     Wal-Mart has indeed violated the civil rights of the plaintiff according to the
     charge of discrimination under Title VII of Civil Rights Act of 1964, as amended,
     42 USC & 1981(2004). Plaintiff makes correction to citing of 29CFR 1614.405.

   **b. Wal-Mart denies 5 CFR 293.106 or 293.107 is applicable to Wal-Mart and
denies that it violated or any other law with respect to document destruction.**

     5 CFR 293.106 or 293.107, may not be applicable to Wal-Mart but 45 CFR
     2507.10 (g) (2), is in fact applicable to Wal-Mart.

   c.    **Wal-Mart denies that any of the individuals named in Paragraph (c.)
violated the Plaintiff's federal statutory rights or any other law.**

     Wal-Mart managers should have given the plaintiff the same statutory rights
     given to other employees in similar situation as she seek advancement without
     violating the Plaintiff's statutory rights or any other law which Wal-Mart have
     violated according to Title VII of Civil Rights Act of 1964.

**d.    Wal-Mart denies the allegations of Paragraph (d)**

The Wal-Mart employee Jessica Smith, selected for the management training position in the same time frame as the plaintiff applied for the training, year ending of 2002 beginning year of 2003, which the plaintiff was notified that she was not accepted for in March 2003. Jessica Smith was in fact a white female who is younger then plaintiff, this employee had started her employment with Wal-Mart after plaintiff, the plaintiff have obtain formal education and had been recommended verbally by the Assistant Floor Manager Jeff, who stated that she was a good worker and suggested that she apply for the position. Plaintiff obtain a written statement from Assistant Floor Manager Sherman Alexander regarding her performance; Announcements at store meetings are made stating the date of new hired person, which notes that Jessica Smith had been hired after the plaintiff.  42 USCS & 1981 (2004) states equal rights under the law, which was denied to the plaintiff.

**e.    Wal-Mart denies that any individuals named of actions described Paragraph (e) violated the Plaintiff's statutory rights.**

Plaintiff applied for Wal-Mart training program application submitted in January or February 2003 or there about and she was told by Debra, Assistant Store Manager and Bill, Assistant Floor Manager that she was not selected in March or April 2003 after she inquired about the application submitted in January. I applied for the Manager Training Program the same time frame of employee Jessica Smith, which was selected for the position and who is indeed is younger then the plaintiff and who is also a Caucasian female.

**f.    Wal-Mart admits that the Plaintiff applied for the Management Training Program in January or February 2003, and again in July 2003. Except as explicitly admitted, the allegations of Paragraph (f) are denied.**

Plaintiff in fact applied for the training management position on three different occasions, she was notified in March or April 2003 of her non-selection. She re-applied in July 2003 and October 2003 the paper work is attached for these two different attempts of applying for the training management position as well as other positions.

**g.    Wal-Mart admits that the Plaintiff applied for the Management Training Program in January or February, and again in July 2003, a application was also submitted in October of 2003 according to printed application Exhibit 3 with this statement of admissions will upholds the allegations of Paragraph (f) stated.**

Plaintiff applied for the Management Training Program in the beginning of 2003 and each time there after when plaintiff saw the position was available up until her application submitted in October of 2003.

**h.      Wal-Mart so admits that Christ Fox, a Caucasian female; Mandy Dodd, Caucasian female; and Marlon McGee, and African American, were selected for the Management Training Program and are indeed younger than the Plaintiff. Wal-Mart further admits that Joey McAnally, a Caucasian male; Shane Bowers, a Caucasian male; and Sherita Buford, African-American female, were selected for the Management Training Program, and that they are all younger than the Plaintiff. The finally statement of admission Wal-Mart admits that Michael Vorhees, a Caucasian male, was an assistant manager at Store# 356, Except as explicitly admitted, allegations of Paragraph (h) are denied.**

From the applications and selected individuals that shows a racial and age in-balance in the Wal-Mart hiring practice, which indeed is a violation of Title VII of the Civil Rights Act of 1964 and the age Discrimination in Employment Act (ADEA). Wal-Mart shows that 45% or blacks in Floor Management positions who are hourly employees but upper level management such as Store Management these numbers would change from the showing of the number of Caucasian selected for the management training program selection of whom are salary employee.   Like the Wal-Mart employee Jessica Smith, selected for the management training position in March or April 2003 was in fact a white female who was younger then plaintiff. The EEOC office did not state this selection are how many application submitted that were applicants that were of similar race and age of Ms. Smith during the January vacancy.  They stated that there were 29 applicants for the Management Trainee Program during July 2003 but they never stated the age or race of these applicants.  The EEOC did stated that these applicants were not interviewed but if the applicants for the January selection were interviewed I was not interviewed nor notified for any of my submitted applications.

**i.      Wal-Mart denies that Plaintiff is entitled to the relief requested in Paragraph (i) or to any other relief. In further defense, Wal-Mart avers:**

Wal-Mart fully and explicitly admitted to all allegations yet denies that the Plaintiff is entitled to the relief requested in Paragraph (i), Wal-Mart statement of admission indeed shows that the Defendant Wal-Mart Stores East, LP is fully liable for all claims and has further revealed that Wal-Mart Stores East, LP is in violation of the Plaintiff's statutory rights as stated in the complaint.

Plaintiff applied for the Management Training Program in the beginning of 2003 and each time there after when plaintiff saw the position was available up until her application submitted in October of 2003.

**h.      Wal-Mart so admits that Christ Fox, a Caucasian female; Mandy Dodd, Caucasian female; and Marlon McGee, and African American, were selected for the Management Training Program and are indeed younger than the Plaintiff. Wal-Mart further admits that Joey McAnally, a Caucasian male; Shane Bowers, a Caucasian male; and Sherita Buford, African-American female, were selected for the Management Training Program, and that they are all younger than the Plaintiff. The finally statement of admission Wal-Mart admits that Michael Vorhees, a Caucasian male, was an assistant manager at Store# 356, Except as explicitly admitted, allegations of Paragraph (h) are denied.**

From the applications and selected individuals that shows a racial and age in-balance in the Wal-Mart hiring practice, which indeed is a violation of Title VII of the Civil Rights Act of 1964 and the age Discrimination in Employment Act (ADEA). Wal-Mart shows than 45% or blacks in Floor Management positions who are hourly employees but upper level management such as Store Management these numbers would change from the showing of the number of Caucasian selected for the management training program selection of whom are salary employee. Like the Wal-Mart employee Jessica Smith, selected for the management training position in March or April 2003 was in fact a white female who was younger then plaintiff. The EEOC office did not state this selection are how many application submitted that were applicants that were of similar race and age of Ms. Smith during the January vacancy. They stated that there were 29 applicants for the Management Trainee Program during July 2003 but they never stated the age or race of these applicants. The EEOC did stated that these applicants were not interviewed but if the applicants for the January selection were interviewed I was not interviewed nor notified for any of my submitted applications.

**i.      Wal-Mart denies that Plaintiff is entitled to the relief requested in Paragraph (i) or to any other relief. In further defense, Wal-Mart avers:**

Wal-Mart fully and explicitly admitted to all allegations yet denies that the Plaintiff is entitled to the relief requested in Paragraph (i), Wal-Mart statement of admission indeed shows that the Defendant Wal-Mart Stores East, LP is fully liable for all claims and has further revealed that Wal-Mart Stores East, LP is in violation of the Plaintiff's statutory rights as stated in the complaint.

## STATEMENT OF OPPOSITION

### FIRST STATEMENT OF OPPOSITION

The plaintiff have shown that a trial of fact can see that there is inference that the Defendant Wal-Mart Stores East, LP did violated the Plaintiff's statutory rights as stated in this actions of discrimination which is stated in Title VII of the Civil Rights Act of 1964, and The Age Discrimination in Employment Act (ADEA) that is stated in The United States Constitution that prohibit employers from discrimination against employees or applications on the basis of race or age.

### SECOND STATEMENT OF OPPOSITION

The Plaintiff's claims has fulfill all requisite administrative conditions precedent to filing suit under Title VII of the Civil Rights Act of 1994 and the Age Discrimination in Employment Act. After receiving a **Right to Sue Letter** from EEOC giving the Plaintiff the right to file in the District Court.

### THIRD STATEMENT OF OPPOSITION

Plaintiff concur that her claim is applicable to statues of limitation.

### FOURTH STATEMENT OF OPPOSITION

The Plaintiff was not paid for her vacation time. She was forced to take a leave of absent because the store cut her hours. She was also denied the opportunity to become a salary employee when her application was not considered for the management training position. The work scheduled given to the plaintiff cutting her income causing her to have insufficient income to meet her obligation and not being able to return to work.

### FIFTH STATEMENT OF OPPOSITION

The Management Training Program was open for applicant in July 2003 and (29) applications was collected giving these applicants the hope of being accepted for this training and then the vacancy was closed. Then opening the same position two months later in October 2003 for both of

these position plaintiffs applied. Wal-Mart stating that
there store did not have a vacancy in July and shortly
after open this vacancy again is pretextual.

## SIXTH STATEMENT OF OPPOSITION

When plaintiff requested information from Wal-Mart
Store East, LP this information was not provide therefore
Wal-Mart was not acting at all time in good faith.

## SEVENTH STATEMENT OF OPPOSITION

Wal-Mart stated that the decisions made and actions
taken concerning the Plaintiff were not based on age and
race factors. There was no correspondence presented to the
plaintiff stating that she was not qualified and did not
meet the criteria for the management training. Also
plaintiff submitted the letter given to plaintiff by her
manager, Mr. Sherman Alexander on her performance. An
plaintiff inquired to members of management on the reason
that her application was not considered and how could she
improve her opportunity to be selected for the management
training program and was not given a response. An on the
list of requirement for the application to be accepted it
stated that if you did not meet the qualification your
application would not be submitted. Wal-Mart Stores East,
LP indeed violated the Plaintiff statutory rights based on
the admitted statements in Paragraph (f) through Paragraph
(h) and by not stating their reasons for not acknowledging
the plaintiff applications.

## EIGHTH STATEMENT OF OPPOSITION

All decisions made and actions taken concerning the
Plaintiff were not done in good cause and such action was
not stated or informed to the Plaintiff as stated above by
the plaintiff in number seventh opposition. If the
decisions that were made were taken for good cause they
were not taken due to the plaintiff work performance or
qualification.  As shown in the written statement by
management proves that the Plaintiff is as state a good
worker.

## NINTH STATEMENT OF OPPOSITION

Wal-Mart acted with an unlawful motive when Wal-mart
never gave the plaintiff a written response to the

consequence of her application and the reason for those consequences.

## TENTH STATEMENT OF OPPOSITION

At the time of the current submitted complaint to the courts I was reconstructing the event that happen over a year ago leading into two years at the current. I submitted an application for the management trainee position in the beginning of year 2003 placing me in the group of applicants for the Management Training Program during that period. The documented proof of my submission and the actual dates and times plaintiff inputted her application into the Wal-Mart computer could be proven by authentic regenerated application that would be in the Wal-Mart computer collective files in Wal-Mart data bank.

## ELEVENTH STATEMENT OF OPPOSITION

Wal-Mart Stores East, LP members of managements have never given the plaintiff any written or verbal notice of any inappropriate act personal or work related to make the defense that plaintiff's claims are barred by her "unclean hands".

## TWELFTH STATEMENT OF OPPOSITION

The plaintiff claim is regarding to her applying three times for the management trainee program with Wal-Mart at the Wal-Mart store completing a computer generated application at the Auburn store there was never any third persons just the managers that work for Wal-Mart whom Wal-Mart is responsible.

## THIRTEENTH STATEMENT OF OPPOSITION

Wal-Mart has not made good faith efforts to comply with Title VII and ADEA from the showing of the racial imbalance and the hiring of younger applicants to the management trainee program.

## FOURTEENTH STATEMENT OF OPPOSITION

Wal-Mart owners as well as managerial staff are responsible for all decision made by the employees and should oversee and approve all actions before they are executed to avoid discriminatory acts. Wal-Mart did not take precaution to avoid discriminatory acts therefore are responsible for the

violation of Title VII of Civil Rights Act and ADEA that
has been committed by Wal-Mart against the plaintiff.
**FIFTEENTH STATEMENT OF OPPOSITION**

Wal-Mart is liable for the employee that is hired to work
for their stores. Wal-Mart also is responsible for
authorization or ratifying of acts or actions by Wal-Mart
employees whether in managerial or supervisory capacity.

**SIXTEENTH STATEMENT OF OPPOSITION**

Wal-Mart has been reckless in hiring employees due to the
discriminatory actions and hiring practice as so admitted.

**SEVENTEENTH STATEMENT OF OPPOSITION**

Wal-Mart has failed to comply with all the law of the equal
employment opportunity laws as so stated.

**EIGHTEENTH STATEMENT OF OPPOSITION**

   The Plaintiff reserves the rights to assert any and
all claim for punitive damage available to her under Title
VII of the Civil Rights Act of 964, the Age Discrimination
in Employment Act, or any other statute upon which comply
to discrimination by such corporation such as Wal-Mart
Stores East, LP have not abided with all the laws of the
equal employment opportunity laws as so stated.

   WHEREFORE,

Plaintiff Wanda Denise Ayers request that the Court award her the following
relief:
(A) An opportunity to complete the Management Trainee program at another
    Wal-Mart in another location.
(B) Award plaintiff reasonable costs and attorney's fees and compensatory
    damages as well as back pay.

   Grant such other relief as the Court deem just and proper.

Wanda D. Ayers
1420 Pauline Street
New Orleans, LA 70117
(504) 945-9781

1x

## CERTIFICATE OF SERVICE

I hereby certify the above and foregoing has been served on the Defendant Wal-Mart Stores East, LP, Pullman Power's by the United States Postal Service mailed by fist-class, postage-paid and properly addressed on this ___28th___ day of December, 2004:

UNITED STATES DISTRICT COURT
U.S. MIDDLE DISTRICCT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

ATTENTION:
Melissa Myers
Deputy Clerk

JOHNSTON BARTON PROCTOR & POWELL LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North

Civil Action No. 3:04-CV-1002-T

Wanda Denise Ayers



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office** RECEIVED

Ridge Park Place
1130 22nd Street, South, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

**2004 DEC 30  A 9: 55**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

October 6, 2004

Wanda Denise Ayers
1420 Pauline Street
New Orleans, LA 70117

Dear Ms. Ayers:

This is in response to your correspondence dated September 24, 2004, addressed to the Birmingham District Office and the Headquarters Office of the Equal Employment Opportunity Commission concerning the investigation and finding rendered for your charge of discrimination filed against Wal-Mart Stores, Inc. (130-2004-00046).

In your letter you requested that the finding be reconsidered because you have stated a prima facie case and suggests that Respondent has not offered a legitimate non-discriminatory reason for its action. You alleged that you have been denied selection for the Management Trainee Program because of your race, Black, and because of your age, 45.

The evidence indicates you were employed at Wal-Mart Store #356 as a Stock Associate. You stated in your letter that you applied for the Management Trainee Program during March 2003, July 2003 and October 2003.

Respondent contends that there is no record of your application for the Management Trainee Program for March 2003. The evidence obtained during the investigation indicates that there were 29 applicants for the Management Trainee Program during July 2003 from District # 74, which includes your home store in Auburn, Alabama. Respondent contends that there were no applicants interviewed or selected because there were no job openings in the district for the Management Trainee Program. The evidence also indicates you have not applied for any posted hourly supervisor positions. The evidence shows that Respondent employs nine (45%) Blacks in their 20 management positions at Store #356. There was no evidence to suggest that you were not selected for any positions because of your race or age.

While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws enforced. Your request that the charge be reconsidered is denied.

You are reminded that you may file a lawsuit against the respondent under federal law based on this charge in federal court. This lawsuit must be filed within 90 days of your receipt of the dismissal and Notice of Right to Sue, or your right to sue will be lost.

Sincerely,

Bernice Williams-Kimbrough
District Director

SEQ:M524214

WANDA D AYERS

WAL ★ MART
702 S.W. 8th St
Bentonville, AR 72716

SOCIAL SECURITY # 0435049791

01WS

| DESCRIPTION | RATE | HOURS | EARNINGS | YEAR TO DATE | | AMT DEDUCTIONS | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| REGULAR EARNING | 77700 | 789 | 6208 | FEDERAL TAX | | 00 | 23561 |
| OVERTIME EARN | | | 00 | SOCIAL SECURITY | | 215 | 28172 |
| SICK PAY | | | 00 | 30567 INS LIFE AUBURN | | 64 | 3935 |
| HOLIDAY PAY | | | 00 | 800 INS MEDICAL C* | | 345 | 2415 |
| CO STK CONT | | | 225 | 9360 INS DENTAL C * | | 3325 | 23142 |
| PERSONAL TIME | | | 00 | 61B5 CRED GARN CGPN | | 300 | 2100 |
| SUNDAY PREMIUM | | | 00 | 225 CO STK CONT | | 00 | 62476 |
| STAKEHOLDER | | | 00 | 6123 STOCK PURCH | | 225 | 225 |
| VAC HRS AVAIL | | 7945 | | 7285 SAMS ADVAN CRD | | 1500 | 1500 |
| SICK HRS AVAIL | | 495 | | 5652 ALABAMA | | 384 | 2688 |
| | | | | | | 00 | 11068 |

DEDUCTIONS START OVER

| CURRENT | 4463 | 279 | 6079 | 75 | BEGIN 03-20-2004 | THIS CHECK 013711036 |
|---|---|---|---|---|---|---|
| YEAR TO DATE | 393501 | 66716 | 104894 | 221889 | END 04-02-2004 | 75 |
| | EARNINGS | TAXES | DEDUCTIONS | NET PAY | PAY PERIOD | |

YEAR TO DATE STOCK PURCHASE DEDUCTIONS

STATEMENT OF EARNINGS AND DEDUCTIONS • DETACH AND RETAIN FOR YOUR RECORDS







MONTGOMERY, AL 361
PM
11 AUG 2004

Wanda Ayers
1420 Pauline St
New Orleans, LA 70117

7011775606

7 S. COLLEGE
AUBURN, AL 36830

OUR PEOPLE
MAKE THE
**Difference**
WAL★MART Stores, Inc.

# *Job Description*
# **Management Trainee**

**Position Requirements**

Primary position requirements are listed below.

- **Experience and Qualification**
  - Retail or customer service related experience preferred and the aptitude to manage multiple projects and supervise hourly Associates.
- **Counting and Math Skills**
  - Must be able to count whole numbers and decimals, add, subtract, multiply, and divide, and be able to use whole numbers, decimals, and fractions.
- **Communication and Basic Writing and Reading**
  - Must be able to write, read, and understand printed material, and be able to communicate with both Customers and other Associates.

**Essential Functions**

Essential functions of this position are listed below.

- Understand and effectively follow all Company procedures involving the completion of Company directed Management Trainee development.
- Learn Company procedures, policies, and culture.
- Effectively resolve Customer and Associate concerns and demonstrate good Customer service.
- Understand, effectively follow, and learn to enforce all Company procedures, Company policies, and applicable laws including but not limited to:
  - The supervision of all Associates.
  - The sales of restricted items.
  - Environmental codes and ordinances.
  - Store security.
- Accurately and efficiently maintain assigned records, Company funds and property in accordance with Company policies and procedures.
- Visually verify:
  - Small print.
  - Items to shipping labels, pricing labels, shelf labels, and other store signing and to the handheld/SMART terminal and register displays.
- Communicate effectively with Customers and other Wal-Mart Associates.
- Accurately and efficiently prepare/review/file routine paperwork.

I have read and understand these responsibilities and requirements for this position, and certify that (mark one):

___✓___    **I have the ability** to perform the essential functions of this position either with or without a reasonable accommodation.

_____    **I do not have the ability** to perform the essential functions of this position either with or without a reasonable accommodation.

Wanda D. Ayers
Associate/Applicant Printed Name

Wanda Agun
Associate/Applicant Signature

7-21-03
Date

Revised: June 2002; Notice: This description supercedes all prior descriptions.

Page 2 of 2



# *Job Description*
# Management Trainee

**Position Requirements**

Primary position requirements are listed below.

- **Experience and Qualification**
  - * Retail or customer service related experience preferred and the aptitude to manage multiple projects and supervise hourly Associates.
- **Counting and Math Skills**
  - * Must be able to count whole numbers and decimals, add, subtract, multiply, and divide, and be able to use whole numbers, decimals, and fractions.
- **Communication and Basic Writing and Reading**
  - * Must be able to write, read, and understand printed material, and be able to communicate with both Customers and other Associates.

**Essential Functions**

Essential functions of this position are listed below.

- Understand and effectively follow all Company procedures involving the completion of Company directed Management Trainee development.
- Learn Company procedures, policies, and culture.
- Effectively resolve Customer and Associate concerns and demonstrate good Customer service.
- Understand, effectively follow, and learn to enforce all Company procedures, Company policies, and applicable laws including but not limited to:
  - * The supervision of all Associates.
  - * The sales of restricted items.
  - * Environmental codes and ordinances.
  - * Store security.
- Accurately and efficiently maintain assigned records, Company funds and property in accordance with Company policies and procedures.
- Visually verify:
  - * Small print.
  - * Items to shipping labels, pricing labels, shelf labels, and other store signing and to the handheld/SMART terminal and register displays.
- Communicate effectively with Customers and other Wal-Mart Associates.
- Accurately and efficiently prepare/review/file routine paperwork.

I have read and understand these responsibilities and requirements for this position, and certify that (mark one):

_____✓_____  **I have the ability** to perform the essential functions of this position either with or without a reasonable accommodation.

_____ _____  **I do not have the ability** to perform the essential functions of this position either with or without a reasonable accommodation.

| Warda Ayers | Warda Ayers | 10-23-03 |
|---|---|---|
| Associate/Applicant Printed Name | Associate/Applicant Signature | Date |

Revised: June 2002; Notice: This description supercedes all prior descriptions.

Page 2 of 2

Exhibit 3

**Wanda Denise Ayers**          **Telephone:**     (334) 332-8028
1945 County Road 57
Notasulga, Alabama 36866

**OBJECTIVE:**   A position in the areas of Customer Service Representative, which will utilize leadership, responsibility, and organizational skills for improving the efficiency of operations.

2001-current          **Wal Mart Super Center**, Auburn Alabama,
                      Customer Assistance walk customer to desired merchandise
                      Assist with any questions
                      Stock showroom shelves with incoming merchandise
                      Organize and clean showroom area daily

1999-2001             **L. S. U. Medical Center**, New Orleans, Louisiana
                      Computer Information,
                      Input patient's data and enter doctor's billing information
                      Journalizes magazines, newspaper articles, and published booklet and pamphlet of staff
                      and file all documents

1996-1999             **Delgado Community College**, New Orleans, Louisiana
                      Office assistant, clerical and computer entry
                      Assist student with the proper use of computer and software application

1993-1996             **Orleans Parish School Board**, New Orleans, Louisiana
                      Child Nutrition, responsible for daily food preparation for over 200 students, staff and
                      faculty

1990-1994             **James Ratliff, Contractor**, New Orleans, Louisiana
                      Secretary and clerical duties, typing contracts
                      Talking with potential clients
                      Maintaining and ordering all needed supplies and equipment

1998-1995             **Crystal Nursery School**, New Orleans, Louisiana
                      Owner and Operator
                      Handled the daily operation of the business
                      Supervised three employees

1997-1998             **Mt. Carmel Christian Faith Academy**, New Orleans, Louisiana
                      Classroom Supervisor
                      Supervise the daily progress of students

1997-1987             **St. Mark Family Day Care**, New Orleans, Louisiana
                      Supervisor and Pre-school Instructor
                      Implementing schedules, money management and daily lesson plans

**Education:**

2001-2002             Faulkner University, Montgomery, Alabama
                      Bachelor of Science Degree, Human Resource Management
1999-2001             Southern University of New Orleans,
                      Major Studies, Business Administration
1996-1999             Delgado Community College, New Orleans, Louisiana
                      Associate Degree Computer Information System

**Special Skills:**   Working knowledge of computers, proper use of office equipment
                      Computer skills: WordPerfect, Microsoft Word, Works, Lotus, Excel, Assess, PowerPoint,
                      Reference Manager and Computer Based System, C++, Visual Base,
                      **Medical Knowledge**: Medical Terminology and First Aid

**Reference:**        Available upon request

# WAL★MART

WAL-MART STORE 0356
1717 S. COLLEGE ST.
AUBURN, AL. 36830

To whom it may concern:

Ms. Wanda Ayers has been employed by Wal-Mart Stores, Inc. for approximately two years. Since the beginning of her employment, she has been dependable and a hard worker. She performs her daily duties with very little supervision.

Sherman Alexander

*5 CFR 293.106*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2004, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE DECEMBER 20, 2004 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 5 -- ADMINISTRATIVE PERSONNEL
CHAPTER I -- OFFICE OF PERSONNEL MANAGEMENT
SUBCHAPTER B -- CIVIL SERVICE REGULATIONS
PART 293 -- PERSONNEL RECORDS
SUBPART A -- BASIC POLICIES ON MAINTENANCE OF PERSONNEL RECORDS

5 CFR 293.106

§ 293.106 Safeguarding information about individuals.

(a) To ensure the security and confidentiality of personnel records, in whatever form, each agency shall establish administrative, technical, and physical controls to protect information in personnel records from unauthorized access, use, modification, destruction, or disclosure. As a minimum, these controls shall require that all persons whose official duties require access to and use of personnel records be responsible and accountable for safeguarding those records and for ensuring that the records are secured whenever they are not in use or under the direct control of authorized persons. Generally, personnel records should be held, processed, or stored only where facilities and conditions are adequate to prevent unauthorized access.

(b) Personnel records must be stored in metal filing cabinets which are locked when the records are not in use, or in a secured room. Alternative storage facilities may be employed provided they furnish an equivalent or greater degree of security than these methods. Except for access by the data subject, only employees whose official duties require access shall be allowed to handle and use personnel records, in whatever form or media the records might appear. To the extent feasible, entry into personnel record storage areas shall be similarly limited. Documentation of the removal of records from storage areas must be kept so that adequate control procedures can be established to assure that removed records are returned on a timely basis.

(c) Disposal and destruction of personnel records shall be in accordance with the General Record Schedule issued by the General Services Administration for the records or, alternatively, with Office or agency records control schedules approved by the National Archives and Records Service of the General Services Administration.

**HISTORY:**
44 FR 65033, Nov. 9, 1979.

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
5 U.S.C. 552 and 4315; E.O. 12107 (December 28, 1978), 3 CFR 1954-1958 Comp.; 5 U.S.C. 1103, 1104, and 1302; 5 CFR 7.2; E.O. 9830; 3 CFR 1943-1948 Comp.; 5 U.S.C. 2951(2) and 3301; and E.O. 12107.

**NOTES:**

NOTES APPLICABLE TO ENTIRE TITLE:

Title 5 of the United States Code was revised and enacted into positive law by Public Law 89-554, Sept. 6, 1966. New citations for obsolete references to sections of 5 U.S.C. appearing in this title may be found in a redesignation table under title 5, Government Organization and Employees, United States Code.

307 words

Service: **Get by LEXSTAT®**
TOC: Code of Federal Regulations  >  /.../  >  SUBPART A-- BASIC POLICIES ON MAINTENANCE OF PERSONNEL RECORDS  > **§ 293.106 Safeguarding information about individuals.**
Citation: **5 CFR 293.106**
View: Full
Date/Time: Wednesday, December 22, 2004 - 11:43 AM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSTAT®**
TOC: <u>United States Code Service: Code, Const, Rules, Conventions & Public Laws</u> > <u>/ . . . /</u> > <u>GENERALLY</u>
> **§ 1981. Equal rights under the law**
Citation: 42 U.S.C.A. §§ 1981 et seq.),

↙Select for FOCUS™ or Delivery
☐

*42 USCS § 1981*

UNITED STATES CODE SERVICE
Copyright © 2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 108-455, APPROVED 12/10/04 \*\*\*
\*\*\* WITH GAPS OF 108-447, 108-451, 108-452 and 108-454 \*\*\*

TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 21. CIVIL RIGHTS
GENERALLY

### ♦ GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

42 USCS § 1981 (2004)

§ 1981.  Equal rights under the law

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**HISTORY:**
   (R. S. § 1977; Nov. 21, 1991, P.L. 102-166, Title I, § 101 105 Stat. 1071.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

Explanatory notes:
   This section was based upon Act May 31, 1870, ch 114, § 16, 16 Stat. 144.
   This section formerly appeared as <u>8 USC § 41.</u>

Amendments:
   1991. Act Nov. 21, 1991 (effective on enactment and applicable as provided by § 402 of such Act, which appears as a note to this section) designated the existing text of this section as subsec. (a); and added subsecs. (b) and (c).

Short titles:
Act Oct. 19, 1976, P.L. 94-559, § 1, 90 Stat. 2641, provided: "This Act [amending 42 USCS § 1988] may be cited as 'The Civil Rights Attorney's Fees Awards Act of 1976'.".
Act Nov. 21, 1991, P.L. 102-166, § 1, 105 Stat. 1071, provides: "This Act may be cited as the 'Civil Rights Act of 1991'.". For full classification of such Act, consult USCS Tables volumes.

Other provisions:
Civil Rights Act of 1991; Congressional findings. Act Nov. 21, 1991, P.L. 102-166, § 2, 105 Stat. 1071, provides:
"The Congress finds that--
"(1) additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace;
"(2) the decision of the Supreme Court in Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989) has weakened the scope and effectiveness of Federal civil rights protections; and
"(3) legislation is necessary to provide additional protections against unlawful discrimination in employment.".
Civil Rights Act of 1991; purposes. Act Nov. 21, 1991, P.L. 102-166, § 3, 105 Stat. 1071, provides:
"The purposes of this Act are--
"(1) to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace;
"(2) to codify the concepts of 'business necessity' and 'job related' enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), and in the other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989);
"(3) to confirm statutory authority and provide statutory guidelines for the adjudication of disparate impact suits under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); and
"(4) to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.".
Construction of Act Nov. 21, 1991 in relation to Wards Cove--Business necessity/cumulation/alternative business practice. Act Nov. 21, 1991, P.L. 102-166, Title I, § 105(b), 105 Stat. 1075, provides: "No statements other than the interpretive memorandum appearing at Vol. 137 Congressional Record S 15275 (daily ed. Oct. 15, 1991) shall be considered legislative history of, or relied upon in any way as legislative history in construing or applying, any provision of this Act [for full classification, consult USCS Tables volumes] that relates to Wards Cove--Business necessity/cumulation/alternative business practice.".
Lawful court-ordered remedies, affirmative action, and conciliation agreements not affected. Act Nov. 21, 1991, P.L. 102-166, Title I, § 116, 105 Stat. 1079, provides: "Nothing in the amendments made by this title [for full classification, consult USCS Tables volumes] shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law.".
Alternative means of dispute resolution. Act Nov. 21, 1991, P.L. 102-166, Title I, § 118, 105 Stat. 1081, provides: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title [for full classification, consult USCS Tables volumes].".
Act Nov. 21, 1991; severability. Act Nov. 21, 1991, P.L. 102-166, Title IV, § 401, 105 Stat. 1099, provides: "If any provision of this Act or an amendment made by this Act [for full classification, consult USCS Tables volumes], or the application of such provision to any person or circumstances is held to be invalid, the remainder of this Act and the amendments made by this Act [for full classification, consult USCS Tables volumes], and the application of such provision to other persons and circumstances, shall not be affected.".

Source: Legal > Federal Legal - U.S. > CFR - Code of Federal Regulations ⓘ
TOC: Code of Federal Regulations > / . . . / > PART 2507-- PROCEDURES FOR DISCLOSURE OF RECORDS UNDER THE FREEDOM OF INFORMATION ACT > § 2507.10 What records are specifically exempt from disclosure?
Terms: personnel w/5 record or information or file or data w/15 protect! or disclos! or priva! (Edit Search)
Focus: business or indust! or private w/15 personnel w/5 record or information or file or data w/15 protect! or disclos! or priva! (Exit FOCUS™)

✔Select for FOCUS™ or Delivery
☐

*45 CFR 2507.10*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2004, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE DECEMBER 20, 2004 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 45 -- PUBLIC WELFARE
SUBTITLE B -- REGULATIONS RELATING TO PUBLIC WELFARE
CHAPTER XXV -- CORPORATION FOR NATIONAL AND COMMUNITY SERVICE
PART 2507 -- PROCEDURES FOR DISCLOSURE OF RECORDS UNDER THE FREEDOM OF INFORMATION ACT

45 CFR 2507.10

§ 2507.10 What records are specifically exempt from disclosure?

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of portions which are exempt under this section. The following categories are examples of records maintained by the Corporation which, under the provision of 5 U.S.C. 552(b), are exempted from disclosure:

(a) Records required to be withheld under criteria established by an Executive Order in the interest of national defense and policy and which are in fact properly classified pursuant to any such Executive Order. Included in this category are records required by Executive Order No. 12958 (3 CFR, 1995 Comp., p. 333), as amended, to be classified in the interest of national defense or foreign policy.

(b) Records related solely to internal personnel rules and practices. Included in this category are internal rules and regulations relating to personnel management operations which cannot be disclosed to the public without substantial prejudice to the effective performance of significant functions of the Corporation.

(c) Records specifically exempted from disclosure by statute.

(d) Information of a commercial or financial nature including trade secrets given in confidence. Included in this category are records containing commercial or financial information obtained from any person and customarily regarded as privileged and confidential by the person from whom they were obtained.

(e) Interagency or intra-agency memoranda or letters which would not be available by law to a party other than a party in litigation with the Corporation. Included in this category are memoranda, letters, inter-agency and intra-agency communications and internal drafts, opinions and interpretations prepared by staff or consultants and records meant to be used as part of deliberations by staff, or ordinarily used in arriving at policy determinations and

decisions.

(f) Personnel, medical and similar files. Included in this category are **personnel** and medical information **files** of staff, individual national service applicants and participants, lists of names and home addresses, and other files or material containing **private** or personal information, the public **disclosure** of which would amount to a clearly unwarranted invasion of the **privacy** of any person to whom the information pertains.

(g) Investigatory files. Included in this category are files compiled for the enforcement of all laws, or prepared in connection with government litigation and adjudicative proceedings, provided however, that such records shall be made available to the extent that their production will not:

(1) Interfere with enforcement proceedings;

(2) Deprive a person of a right to a fair trial or an impartial adjudication;

(3) Constitute an unwarranted invasion of personal privacy;

(4) Disclose the identity of a confidential source, and in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful security intelligence investigation, confidential information furnished by confidential source;

(5) Disclose investigative techniques and procedures; or

(6) Endanger the life or physical safety of law enforcement personnel.

**HISTORY:**
[55 FR 50330, Dec. 6, 1990; redesignated and revised at 63 FR 26488, 26493, May 13, 1998]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
42 U.S.C. 12501 et seq.

**NOTES:**
[EFFECTIVE DATE NOTE: 63 FR 26488, 26493, May 13, 1998, redesignated and revised Part 1215, effective June 12, 1998.]
[CROSS REFERENCE: This section was formerly § 1215.10.]

551 words

Source: Legal > Federal Legal - U.S. > **CFR - Code of Federal Regulations** 🛈
  TOC: Code of Federal Regulations > / . . . / > PART 2507-- PROCEDURES FOR DISCLOSURE OF RECORDS UNDER THE FREEDOM OF INFORMATION ACT > **§ 2507.10 What records are specifically exempt from disclosure?**
Terms: personnel w/5 record or information or file or data w/15 protect! or disclos! or priva! (Edit Search)
Focus: **business or indust! or private w/15 personnel w/5 record or information or file or data w/15 protect! or disclos! or priva!** (Exit FOCUS™)
  View: Full
Date/Time: Wednesday, December 22, 2004 - 2:27 PM EST