**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **WANDA DENISE AYERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.:  3:04cv1002-T** |
| **v.** ) | |
| ) | |
| **WAL-MART CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

_____

**BRIEF IN SUPPORT OF DEFENDANT WAL-MART STORES EAST, LP'S**
**MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION**
**TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

_____

Jennifer F. Swain (ASB-7761-I67-J)
E-mail:  jfs@jbpp.com
Alan D. Mathis (ASB-8922-A59M)
E-mail:  adm@jbpp.com
Attorneys for Defendant
Wal-Mart Stores East, LP
**JOHNSTON BARTON**
**PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone:  (205) 458-9400
Facsimile:  (205) 458-9500

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF FACTS ....................................................................2

III.    ARGUMENT ......................................................................................11

        A.      Summary Judgment Standard ..............................................11

        B.      Wal-Mart Is Entitled to Summary Judgment On The
                Plaintiff's Promotion Claims ...............................................13

                1.      Title VII & ADEA Analysis ......................................13

                2.      The Plaintiff's Claims Regarding her February 27, 2003
                        MTP Application Are Untimely .................................14

                3.      The Plaintiff Cannot Establish A *Prima Facie* Case Of
                        Race Or Age Discrimination With Respect To Her
                        July 2003 and October 2003 MTP Applications ....................16

        C.      The Plaintiff's Retaliation Claim Fails As A Matter Of Law .............17

                1.      The Alleged Retaliation Is Not Causally Related
                        To The Plaintiff's EEOC Charge ...............................17

                2.      The Plaintiff Did Not Suffer Any Adverse Employment
                        Action .........................................................22

                3.      The Plaintiff Has Not Established A Valid Retaliatory
                        Harassment Claim ...........................................25

        D.      The Plaintiff's Constructive Discharge Claim is Without Merit ........26

IV.     CONCLUSION ...................................................................................29

        CERTIFICATE OF SERVICE .........................................................30

# TABLE OF AUTHORITIES

## CASES

### A.   United States Supreme Court

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ......................................................12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................................... 11-12

Love v. Pullman, 404 U.S. 522 (1972) ...........................................................................14

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...........................................13

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) ........................................16

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) ...............................................13

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) ............................13

### B.   United States Courts of Appeal

Adler v. Wal-Mart Stores, Inc., 144 F3d. 664 (10th Cir. 1995) ......................................26

Avirgan v. Hull, 932 F.2d 1572 (11th Cir. 1991) ...................................................... 12-13

Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607 (11th Cir. 1987)...........................12

Bass v. Board of County Commissioners, 256 F.3d 1095(11th Cir. 2001) .................21, 23

Boze v. Branstetter, 912 F.2d 801 (5th Cir. 1990)............................................................28

Coke v. Gen. Adjustment Bureau, 640 F.2d 584 (5th Cir. 1981) .....................................13

Cole v. May Dep't Stores Co., 109 Fed. Appx. 839 (8th Cir. 2004)........................... 27-28

Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) ....................................12

Evers v. General Motors Corp., 770 F.2d 984 (11th Cir. 1985) .......................................12

Fairbrother v. Morrison, No. 03-9242-cv, 2005 U.S. App. LEXIS 11148, *42

     (2nd Cir. June 14, 2005) ...................................................................................24

Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536 (11th Cir. 1987) ...................................28

Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274 (11th Cir. 1999)..............................12

Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1997)......................................13

Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43 (1st Cir. 1998).............27

Higdon v. Jackson, 393 F.3d 1211 (11th Cir. 2004) ...................................................18, 20

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001)........................... 27-28

Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900 (11th Cir. 1988)......................27

Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992) ......................................................20

Kelliher v. Veneman, 313 F.3d 1270 (11th Cir. 2002)......................................................16

McAdams v. Harvey, No. 04-16263, 2005 U.S. App. LEXIS 13609, at *3-4

      (11th Cir. July 6, 2005)..................................................................................18, 22

Maynard v. Pneumatic Products Corp., 256 F.3d 1259 (11th Cir. 2001) ..........................14

Medina v. Income Support Div., No. 04-2166, 2005 U.S. App. LEXIS 12786,

      *10-11 (10th Cir. June 28, 2005) ..........................................................................24

Meiners v. Univ. of Kansas, 359 F.3d 1222 (10th Cir. 2004) ..................................... 19-20

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269 (11th Cir. 2002) ..............................26

Olson v. Lowe's Home Centers, Inc., 130 Fed. Appx. 380 (11th Cir. 2005) .............. 22-23

Parks v. City of Chattanooga, 74 Fed. Appx. 432 (6th Cir. 2003) ...................................20

Pennington v. City of Huntsville, 261 F.3d 1262 (11th Cir. 2001) ...................................13

Petrosino v. Bell Atlantic, 385 F.3d 210 (11th Cir. 2004)................................................16

Pipkins v. City of Temple Terrace, 267 F. 3d 1197 (11th Cir. 2001) ...............................21

Sallis v. Univ. of Minn., 408 F.3d 470 (8th Cir. 2005)....................................................24

Vessels v. Atlanta Independent Sch. Sys., 408 F.3d 763 (11th Cir. 2005)........................16

Webb v. Cardiothoracic Surgery Associates, 139 F. 3d 532 (5th Cir. 1998) ...................21

Weeks v. Harden Mfg. Corp., 291 F.3d 1307 (11th Cir. 2002) .........................................17

Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998)...............................23

Woods v. Delta Beverage Group, Inc., 274 F.3d 295 (5th Cir. 2001) ............................27

### C.     United States District Court

Merit v. Southeastern Penn. Transit Auth., 315 F. Supp. 2d 689

    (E.D. Pa. 2004)................................................................................................13, 25

Perryman v. West, 949 F. Supp. 815 (M.D. Ala. 1996) ...................................................25

Sanders v. City of Montgomery, 319 F. Supp. 2d 1296 (M.D. Ala. 2004) ................. 14-16

### D.     Rules and Statutes

29 U.S.C. § 626(d) ...........................................................................................................14

42 U.S.C. § 2000e-5(e) .....................................................................................................14

Fed. R. Civ. P. 56............................................................................................... 11-12, 22

## I.    INTRODUCTION

There is no genuine issue of material fact as to any of the Plaintiff's claims and she has failed to establish even a *prima facie* case of age discrimination, race discrimination, retaliation, or constructive discharge.  The Plaintiff's age and race discrimination claims regarding her application to Wal-Mart's Management Training Program ("MTP") during the January 2003 application period fail because she has not fulfilled all conditions precedent to bringing such claims.  Her discrimination claims with respect to her July and October 2003 MTP applications fail because no one was even interviewed for the positions to which she applied during those periods.  The Plaintiff's retaliation claim suffers a similar fate because she cannot establish a causal connection between any alleged retaliatory conduct and her EEOC charge or that any of the alleged conduct constitutes an adverse employment action.  With respect to the Plaintiff's constructive discharge claim, she never resigned from her employment and she has testified that she took a leave of absence to care for her sick mother.

Moreover, the Plaintiff's Motion for Summary Judgment is not supported by any evidence; it is based on nothing more than speculation, conclusory allegations, and legal conclusions.  Because the Plaintiff has no evidence to establish even a *prima facie* case of discrimination, retaliation, or constructive discharge, Wal-Mart is entitled to summary judgment as a matter of law.

## II.    STATEMENT OF FACTS[1]

The Plaintiff, Wanda Ayers, was hired by Wal-Mart Store #356 in Auburn, Alabama on November 15, 2001.  (Exh. A p. 113, lines 10-15).  The Plaintiff worked for Wal-Mart as an overnight stocker.  (Exh. A p. 13, lines 16-22).

Openings for hourly supervisory positions at Store #356, such as department manager and support manager, are posted in the store so that interested associates can apply for the positions.  (Exh. A p. 125, lines 4-10; Exh. C ¶ 11).  During her employment with Wal-Mart, the Plaintiff never applied for any of these posted hourly supervisory positions, nor did she seek any hourly role other than her position as an overnight stocker.  (Exh. A p. 125, lines 11-23 to p. 126, lines 1-10).  However, the Plaintiff submitted an application to Wal-Mart's MTP during the January 2003 application period.  (Exh. A p. 127, lines 10-18; Exh. B ¶ 6).  Applicants selected for the MTP participate in a 17-week training program.  (Exh. B ¶ 5).  Those who successfully complete the program are placed in salaried assistant manager positions.  (Exh. B ¶ 5).

Applications for the MTP were made by associates on an in-store computer via Wal-Mart's intranet system.  (Exh. A p. 128, lines 3-5; Exh. B ¶ 4).  Decisions as to which applicants are interviewed are made by District Managers.  (Exh. A p. 143, lines 21-23 to p. 144, line 1; p. 124, lines 5-13; Exh. B ¶ 3).  During the Plaintiff's employment with Wal-Mart, the District Manager for District #74, which encompasses Store #356, was Don Bost.    (Exh. A p. 124, lines 5-13; Exh. B ¶ 2).

The Plaintiff's first on-line application for the MTP was submitted on February 27, 2003.  (Exh. A p. 127, lines 10-18; Exh. B ¶ 6; Plaintiff's Motion for Summary Judgment p. 2).  There

---

[1] Despite its good faith efforts to do so, Wal-Mart has been unable to ascertain whether the Plaintiff contests any of the facts contained in Wal-Mart's Statement of Facts.  Wal-Mart delivered its Statement of Facts to the plaintiff on August 1, 2005, but did not receive any response from her.

were eighty-four applicants to the MTP from District #74 during this application period.  (Exh. B ¶ 6).  Thirteen of the January 2003 applicants were chosen to be interviewed; the interviews were held on March 3-4, 2003. (Exh. B ¶ 6).  Five of the interviewees were selected, with four of those starting the training program on April 5, 2003.  (Exh. B ¶ 6).  The Plaintiff was not interviewed, and was informed by co-manager, Debra Davidson, prior to April 5, 2003, that she had not been selected for the MTP.  (Exh. A p. 131, lines 2-10; Exh. D ¶ 3-5; Exh. B ¶ 6).

The Plaintiff submitted another on-line application for the MTP on July 21, 2003.  (Exh. A p. 143, lines 12-15; p. 198, lines 11-15; Exh. B ¶ 7).  There were twenty-nine applicants to the MTP from District # 74 during the July, 2003 application period.  (Exh. B ¶ 7).  None of the July 2003 applicants was interviewed or selected because there were no job vacancies to be filled at that time.  (Exh. B ¶ 7).

The Plaintiff alleges that she submitted another application for the MTP on October 23, 2003.  (Exh. A152, lines 17-20; Plaintiff's Motion for Summary Judgment, p. 2).  Wal-Mart has no record of receiving an application from the Plaintiff at that time.  (Exh. B ¶ 8).  Wal-Mart's record indicates that there were thirty-eight applicants to the MTP in October 2003.  (Exh. B ¶ 8).  However, once again, none of those applicants was interviewed or selected because there were no job vacancies to be filled.  (Exh. B ¶  8).

On October 27, 2003, the Plaintiff filed an EEOC charge alleging race and age discrimination because she was not selected for the MTP following her July 2003 application.  (Exh. A p. 197, lines 6-20, Exh. 9).  The Plaintiff, who is African-American, turned 45 years old in July 2003.  (Exh. A p. 119, lines 19-22).  Her charge of discrimination did not include allegations regarding her MTP applications during the January or October 2003 period.  (Exh. A Exh. 9).

3

On March 22, 2004, the Plaintiff requested a leave of absence to care for her ill mother. (Exh. A p. 81, lines 11-23; p. 82, lines 4-9, Exh. 7).  The Plaintiff's leave request form certified her for continuous leave beginning on April 1, 2004, and ending on August 1, 2004.  (Exh. A p. 88, lines 10-20; p. 89, lines 3-5, Exh. 7).  The Plaintiff's requested leave was granted on March 23, 2004.  (Ayers' Depo. p. 82, lines 1-2).

The Plaintiff did not return to work at Wal-Mart when her leave of absence expired on August 1, 2004, nor did she request an extension of her leave prior to that time.  (Exh. A p. 89, lines 6-16; Exh. C ¶ 4).  The Plaintiff claims that she contacted Store Manager, Shannon Moser, on August 10, 2004, and told her that she was still needed to care for her ill mother.  (Exh. A p. 91, lines 1-3; p. 95, lines 5-8).  The Plaintiff indicated that she did not know when she would be able to return to work.  (Exh. A p. 97, lines 19-23 to p. 98, lines 1-4).  The Plaintiff did not return to work or make any leave requests after this time.  (Exh. A p. 89, lines 6-16; p. 96, lines 17-21).

On August 25, 2004, the EEOC issued a Dismissal and Notice of Rights letter to the Plaintiff; and, on October 15, 2004, the Plaintiff filed this action.  (Compl.).  In her Complaint, the Plaintiff claims that Wal-Mart discriminated against her on the basis of her race and age when she was not selected for the MTP after the January, July, and October 2003 application periods.  (Compl. p. 1; Plaintiff's Motion for Summary Judgment, p.1).

The Plaintiff also claims that Wal-Mart retaliated against her after she filed her charge of discrimination with the EEOC.  (Exh. A p. 203, lines 18-23 to p. 204, lines 1-7; Compl. p.5).  Specifically, the Plaintiff claims that a "listening device" was placed in a vase in her home.  (Exh. A p. 25, lines 8-12).  The Plaintiff admits that she never saw the listening device.  (Exh. A p. 37, lines 9-14).  She nonetheless believes that there was a listening device in her home because

several Wal-Mart associates allegedly made comments to her about conversations she had in her home. (Exh. A p. 26, lines 5-10 to p. 27, lines 1-20).

The Plaintiff also believes that a listening device had been placed in her home because, according to her, Wal-Mart hourly associate Alphonzo Clark stole a vase from her home on November 25, 2003. (Exh. A p. 22, lines 22-23 to p. 23, lines 1-8; p. 25, lines 5-12). The Plaintiff had dated Mr. Clark for approximately one year before they broke off their relationship. (Exh. A p. 17, lines 4-6; p. 18, lines 11-13, 19-23 to p. 19, lines 1-7). The Plaintiff believes that the listening device must have been in the vase allegedly stolen by Mr. Clark because the vase would otherwise have no value to him. (Exh. A p. 36, lines 9-18). The Plaintiff filed a police report against Mr. Clark on November 25, 2003, in which she accused him of stealing the vase allegedly containing a listening device. (Exh. A p. 22, lines 22-23 to p. 23, lines 1-8, Exh. 3).

The Plaintiff also believes that her cell phone was tapped in retaliation for her having filed an EEOC charge. (Exh. A p. 38, lines 3-9). As with her allegation about the listening device, the Plaintiff believes that her cell phone was tapped because several associates made comments to her about conversations she had on her cell phone. (Exh. A p. 40, lines 2-12). She also believes that her cell phone was tapped because she noticed what she believed to be irregularities on her cell phone bill, when two calls appeared as being made to Tuskegee that were actually made to other locations. (Exh. A p. 41, lines 4-8; p. 43, lines 12-23 to p. 44, lines 1-3, 11-16). Finally, the Plaintiff believes that her cell phone had been tapped because she heard a clicking noise, as if someone were hanging up the line, when she was speaking to her ex-husband on her cell phone. (Exh. A p. 46, lines 1-23 to p. 47, lines 1-6).

The Plaintiff believes that either Alphonzo Clark or Danny Dorn, an hourly Wal-Mart associate who grew up with Clark, was responsible for tapping her cell phone. (Exh. A p. 48,

lines 20-23).  She speculates that Dorn may have been involved because he worked for Wal-Mart in loss prevention.  (Exh. A p. 49, lines 16-22).

The Plaintiff also claims that she was retaliated against by Wal-Mart when some neighborhood children did not deliver Christmas merchandise that she ordered from them.  (Exh. A p. 282, lines 8-14).  The Plaintiff blames Wal-Mart for this conduct because the situation occurred after she filed her charge.[2]  (Exh. A p. 282, lines 17-23 to p. 283, lines 1-10).  The Plaintiff admits that it is possible that the children were just being irresponsible, and the situation may have been "random."  (Exh. A p. 283, lines 11-22).

The Plaintiff also believes that she was retaliated against when Alphonzo Clark allegedly followed her around the store, berated and "talked down" to her, referred to her as stupid, and stated that she either needed to leave the area or have someone come get her before something happened to her.  (Exh. A p. 15, line 23 to p. 16, lines 1-7; p. 19, lines 13-23 to p. 20, lines 1-23, Exh. 2).  The Plaintiff does not know why Clark followed her around the store or made these comments.  (Exh. A p. 54, lines 4-8, 13-20).  Clark was not aware that the Plaintiff had filed an EEOC charge.  (Exh. E ¶ 4).

The Plaintiff filed a police report against Clark relating to this incident on January 12, 2004.  (Exh. A p. 15, lines 9-22, Exh. 2).  The police report indicates that "Ayers said that she ... did not notify Wal-Mart management because of an on going dispute she has with them."  (Exh. A, Exh. 2).  The Plaintiff claims that she complained to Assistant Managers Robert Claiborne and Sherman Alexander about the incident with Clark.  (Exh. A p. 50, lines 9-15).  The Plaintiff

---

[2] The Plaintiff testified at her deposition that she also believes that this situation was related to her charge because it occurred around the time that someone erased files from her home computer.  (Exh. A p. 282, lines 22-23 to p. 283, lines 1-2).  However, she testified that her computer was erased after January 11, 2004.  (Exh. A p. 15, lines 16-18, Ex. 2; p. 34, line 23 to p. 35, lines 1-8; p. 80, line 23 to p. 81, lines 1-7).  She believes that Alphonzo Clark or Danny Dorn must have erased her computer because they were the only ones who had access to her house.  (Exh. A p. 80, lines 4-15).

claims that neither Claiborne nor Alexander brought closure to her complaint by informing her of any investigation.  (Exh. A p. 52, lines 6-23 to p. 53, lines 1-16).  She does not claim that Clark threatened her on any other occasions after her complaint.  (Exh. A p. 252, lines 10-13).

The Plaintiff also claims that an hourly Associate she identifies only as "Mattie" told her that if she did not leave she would lose everything she had and that she needed to go back where she came from.  (Exh. A p. 250, lines 22-23 to p. 251, lines 1-11).  She does not know why Mattie would say this to her, (Exh. A p. 251, lines 12-22), or whether Mattie was aware that she had filed an EEOC charge.  (Exh. A p. 253, lines 14-21).  Mattie never said anything to the Plaintiff about her EEOC charge.  (Exh. A p. 254, lines 2-6).  Mattie was not aware that the Plaintiff had filed an EEOC charge.  (Exh. F ¶ 2).

The Plaintiff claims that Danny Dorn called her on September 11, 2003, laughing on the phone and telling the Plaintiff that he thought she would be gone home by now.  (Exh. A p. 288, lines 21-23 to p. 289, lines 1-3).  She denies that Dorn made this call before she filed her EEOC charge, because she claims that she mailed her charge in September.  (Exh. A p. 289, lines 4-9).  She admits, however, that Wal-Mart received notice of her charge from the EEOC, not from her. (Exh. A p. 289, lines 10-13).

Additionally, the Plaintiff claims that other Wal-Mart Associates followed her around the store, followed her into the ladies' room to determine which stall she went into, stated that she had AIDS, and pointed her out "like she was an animal at the zoo."  (Exh. A p. 262, line 23 to p. 263, lines 1-4; p. 283, line 23 to p. 284, lines 1-6).  The Plaintiff claims that Assistant Manager, Sherman Alexander, once called her name during a meeting in which Wal-Mart's Open Door policy allowing associates to complain to management was being discussed, saying "isn't that right Wanda?"  (Exh. A p. 269, lines 12-23 to p. 271, lines 1-5).  However, the Plaintiff did not

inform any of these associates about her charge of discrimination and does not know whether they were aware of the charge. (Exh. A p. 263, lines 15-18; p. 268, lines 22-23 to p. 269, lines 1-4; p. 272, lines 13-23 to p. 273, lines 1-4; p. 274, lines 5-15). She claims that she asked assistant manager Sherman Alexander why she was being followed, and he told her that he did not know. (Exh. A p. 264, lines 8-23 to p. 266, lines 1-22).

The Plaintiff also claims that her employee discount card was declined at a cash register while she was shopping at Wal-Mart shortly after her EEOC charge was filed. (Exh. A p. 204, lines 8-18). The Plaintiff believes that she went to management about the problem, and was sent to the personnel manager. (Exh. A p. 205, line 23 to p. 206, lines 1-6). The Plaintiff admits that the problem with her discount card was corrected and that she was able to use it again, but complains that it took longer than usual. (Exh. A p. 205, lines 16-22; p. 207, lines 5-19).

Additionally, the Plaintiff claims that she was retaliated against because she was not told that the time for the third-shift store meeting had changed. (Exh. A p. 279, line 4-21). The Plaintiff admits that the failure to notify her could have been an oversight and that she may not have been at work the day the meeting change was announced. (Exh. A p. 281, lines 7-10). She does not know whether the meeting was changed because of her. (Exh. A p. 280, lines 19-23 to p. 281, line 1).

The Plaintiff also claims that her work schedule changed and that her scheduled hours were cut.[3] (Exh. A p. 208, lines 3-5; p. 209, lines 12-14). According to the Plaintiff, she had a "set schedule" prior to the filing of her EEOC charge. (Exh. A p. 219, lines 22-23 to p. 220, lines 1-2; p. 222, line 4). She claims that after her charge was filed, she was scheduled for different and fewer days. (Exh. A p. 219, lines 16-23 to p. 220, lines 1-12; p. 237, lines 7-23).

---

[3] The Plaintiff claims that, as a result of her hours being cut, her pay decreased. (Plaintiff's Motion for Summary Judgment p. 3, ¶ 9).

The Plaintiff testified that she continued coming to work on the days for which she had previously been scheduled. (Exh. A p. 215, lines 4-14; p. 230, line 23 to p. 231, lines 1-6; p. 234, line 23 to p. 235, lines 1-5). The Plaintiff complains that Assistant Manager Robert Claiborne refused to clock her in on days that she was not scheduled to work, and she had to ask another manager to clock her in. (Exh. A p. 254, lines 7-9; p. 255, lines 8-17; p. 257, lines 1-16). After about four days, the Plaintiff claims that she stopped clocking in altogether for days on which she worked but was not scheduled, and filled out time adjustment sheets so that she would be paid for these unscheduled days. (Exh. A p. 254, lines 10-23 to p. 255, lines 1-3; p. 257, lines 17-23 to p. 258, lines 1-16). The Plaintiff claims that Robert Claiborne told her that she would be coached if she continued to use time adjustment forms instead of clocking in. (Exh. A p. 259, lines 14-18). The Plaintiff met with Claiborne, along with Store Manager, Shannon Moser, to discuss the situation, and admits that it was corrected after this meeting. (Exh. A p. 259, lines 19-23 to p. 260, lines 1-4; p. 260, lines 8-23).

Associate schedules at Wal-Mart Store # 356 are generated by a computerized scheduling system known as Preferred Scheduling. (Exh. C ¶ 5). Under the Preferred Scheduling system, the Store is provided with computerized shifts created by the Wal-Mart's Home Office in Bentonville, Arkansas based on sales figures from the same time period in the prior year. (Exh. C ¶ 5). The Store inputs associate availability based on Scheduling Availability forms completed by associates. (Exh. C ¶ 5). The computer then generates associate schedules based on forecasted sales, associate availability, and length of service. (Exh. C ¶ 5). Thus, both before and after her EEOC charge, the Plaintiff's schedule varied somewhat based on the forecasted sales for the period in question and the availability and length of service of other overnight stockers, as well as her own availability and length of service. (Exh. C ¶ 5).

9

The Plaintiff's schedules for the time period in question confirm that her scheduled days varied both before her charge was filed and after, as did the number of hours she was scheduled to work each week.  (Exh. C ¶ 6).  The Plaintiff's hours decreased somewhat in late March 2004, approximately five months after she filed her EEOC charge.  (Exh. C ¶ 7).  This decrease coincides with the time the Plaintiff requested a leave of absence in March 2004.  (Exh. A p. 81, lines 11-23, Exh. 7; Exh. C ¶ 7).

Finally, the Plaintiff claims that she was retaliated against because she was not paid for her unused vacation time.  (Exh. A p. 96, lines 5-7).  The Plaintiff asserts that when she contacted Store Manager, Shannon Moser, on August 10, 2004, regarding her inability to return to work, she requested that she be sent a check for her unused vacation pay.  (Exh. A p. 95, lines 7-13).  Pursuant to Wal-Mart policy, associates on leave are entitled to vacation pay only if it is requested.  (Exh. C ¶ 8).  Moser understood the Plaintiff's request on August 10, 2004, to be for her final paycheck, not for vacation pay.  (Exh. C ¶ 9).  The Plaintiff admits that Moser mailed her a final paycheck in August 2004.  (Exh. A p. 95, lines 11-12, 18-20; p. 96, lines 4-10).  Moser had not sent this check to the Plaintiff previously because the Plaintiff had moved to New Orleans to live with her mother, but had not completed a revised Associate Information Form.  (Exh. C ¶ 10).

In addition to her other claims, the Plaintiff claims that she was constructively discharged because of the alleged retaliation.  (Compl. p. 5, ¶ 8; Plaintiff's Motion for Summary Judgment, pp. 9-10).  The Plaintiff admits, however, that she took a leave of absence from Wal-Mart in April 2004 to care for her ill mother and that she did not return from this leave.  (Exh. A p. 82, lines 4-9; p. 88, lines 10-20; p. 89, lines 3-5, 10-12).  Wal-Mart informed the Plaintiff in its

Notice of Unavailability of Stocker Position filed on February 23, 2005, that her employment would be terminated for job abandonment.

The Plaintiff was aware that Wal-Mart has multiple policies prohibiting race and age discrimination, as well as retaliation.  (Exh. A p. 289, line 23 to p. 290, lines 1-4).  When the Plaintiff was hired at Store # 356, she received a copy of Wal-Mart's Associate Handbook.  (Exh. A p. 290, lines 5-23 to p. 291, lines 1-5, Exhs. 12, 13).  The Associate Handbook contains Wal-Mart's Respect for the Individual policy, which prohibits discrimination and harassment, as well as Wal-Mart's Open Door policy.  (Exh. A p. 291, lines 6-10, 15-20, Exh. 13, pp. 6-7).  Under the Open Door policy, associates are free to complain to progressively higher levels of management about harassment or other workplace concerns without fear of retaliation.  (Exh. A p. 270, lines 10-14; p. 291, lines 6-14, Exh. 12, p. 6).

The Plaintiff was familiar with these policies and completed Computer Based Learning modules on these topics during her employment with Wal-Mart.  (Exh. A p. 291, lines 6-20; p. 292, lines 12-20).  The Plaintiff was also aware that a toll-free number that could be used to report complaints to Wal-Mart's Home Office was posted in the store.  (Exh. A 291, lines 21-23 to p. 292, lines 1-7).  The Plaintiff never used the toll-free number to make any complaints to Wal-Mart's Home Office.  (Exh. A p. 292, lines 8-11).

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is proper under <u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).    While all

reasonable doubts must be resolved in the non-movant's favor, the trial court is not required to "resolve all doubts in such a manner." Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987). Indeed, to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) ("There must be sufficient evidence on which the jury could reasonably find for the plaintiff . . . ."). Accordingly, summary judgment is proper unless there is sufficient evidence favoring the non-movant for the finder of fact to find for that party. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).

Although the movant has the initial responsibility of informing the Court of the basis for its motion and identifying the evidence that demonstrates the absence of any genuine issue of material fact, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. Furthermore, pursuant to Rule 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). In light of the requirements of Rule 56(e), the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985). Similarly, legal conclusions submitted in opposition to summary judgment should be disregarded. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) ("The evidence presented cannot consist of

conclusory allegations or legal conclusions."). The Plaintiff's motion for summary judgment is not accompanied by any supporting evidence; it is neither supported by sworn statements nor authenticated documents. The Plaintiff's motion contains nothing more than speculation, conclusory allegations, and legal conclusion, and therefore has no probative value. "In opposing summary judgment, it is incumbent upon the nonmoving party to 'set forth specific facts *showing* that there is a genuine issue for trial.' This may be difficult for litigants proceedings pro se on claims involving complicated legal analysis, but it is a minimum requirement nonetheless." Merit v. Southeastern Penn. Transit Auth., 315 F. Supp. 2d 689, 709 (E.D. Pa. 2004).

**B.  Wal-Mart Is Entitled To Summary Judgment On The Plaintiff's Promotion Claims**

**1.  Title VII & ADEA Analysis** [4]

The Plaintiff's claims that she was not selected for Wal-Mart's MTP because of her race and age are governed by the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). See Grigsby v. Reynolds Metals Co., 821 F.2d 590, 594 (11th Cir. 1997). Only if the Plaintiff first establishes a *prima facie* case must Wal-Mart "articulate some legitimate, non-discriminatory reason" for its alleged action. See Burdine, 450 U.S. at 252-53; McDonnell Douglas, 411 U.S. at 802.

---

[4] The Eleventh Circuit typically applies legal standards developed in Title VII and ADEA cases interchangeably. See Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001); see also Coke v. Gen. Adjustment Bureau, 640 F.2d 584, 587 (5th Cir. 1981) ("Because Title VII shares with ADEA a common purpose, . . . , and because both statutes require an almost identical filing with the appropriate agency within 180 days after the alleged discriminatory act, both this circuit and the Supreme Court have considered cases arising under one statute to have value as precedent for cases arising under the other.")

**2.    The Plaintiff's Claims Regarding her February 27, 2003 MTP Application Are Untimely**

The Plaintiff's claim that she was denied a promotion to Wal-Mart's MTP based on her February 27, 2003 application fails as a matter of law because she did not file a timely charge of discrimination with the EEOC.  Timely filing a charge of discrimination with the EEOC is a prerequisite to bringing suit under both Title VII and the ADEA. See 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d); see also Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001) (dismissing claim under the Americans with Disabilities Act where plaintiff failed to prove that he timely filed his charge of discrimination with the EEOC); Love v. Pullman, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII . . . may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief."); Sanders v. City of Montgomery, 319 F. Supp. 2d 1296, 1310 (M.D. Ala. 2004) ("[T]his procedural rule is not a mere technicality, but an integral part of Congress' statutory scheme that should not 'be disregarded by courts out of a vague sympathy for particular litigants.'") (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1994)).

A plaintiff under both Title VII and the ADEA has the burden of proving all conditions precedent to filing suit, including the condition that she timely filed a charge with the EEOC. Maynard, 256 F.3d 1259, 1262 (11th Cir. 2001) (citing Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1011 (11th Cir. 1982) ("The timely filing of an EEOC complaint is a condition precedent to a Title VII action.").  Alabama is not a "deferral state." Thus, the Plaintiff must prove that she filed an EEOC charge within 180 days of the allegedly unlawful employment practice of which she complains.  42 U.S.C. § 2000e-5 (e)(1); 29 U.S.C. § 626(d).

The Plaintiff filed her charge of discrimination with the EEOC on October 27, 2003. (Exh. A p. 197, lines 6-20, Exh. 9).  Accordingly, any allegations of unlawful employment practices occurring before April 30, 2003, are untimely and are due to be dismissed.  See Sanders v. City of Montgomery, 319 F. Supp. 2d 1296, 1310 (M.D. Ala. 2004) ("[I]f a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.").

The Plaintiff filed her application for the MTP during the January 2003 application period on February 27, 2003.  (Exh. A p. 127, lines 10-18; Exh. B ¶ 6; Plaintiff's Motion for Summary Judgment p. 2).  Thirteen of the January 2003 applicants were chosen to be interviewed; the interviews were held on March 3 and 4, 2003.  (Exh. B ¶ 6).  Five of the interviewees were selected for the MTP and four of the five began their training on April 5, 2003.  (Exh. B ¶ 6).  Debra Davidson informed the Plaintiff that she had not been chosen for the MTP prior to April 5, 2003.  (Exh. A p. 131, lines 2-10; Exh. D ¶ 3-5; Exh. B ¶ 6).  Consequently, the Plaintiff's claims regarding her February 27, 2003 application were not timely filed with the EEOC and are due to be dismissed.  See Sanders, 319 F. Supp. 2d at 1310 (M.D. Ala. 2004) ("[T]he limitations period begins to run when an employee received notice of the allegedly discriminatory act, not when the consequences of the decision become painful to the employee.")

Moreover, the Plaintiff did not even make a reference to her February 27, 2003 MTP application in her charge of discrimination filed with the EEOC.  (Exh. A, Exh. 9).  Indeed, the only allegations included in the charge regarding any application to the MTP related to the Plaintiff's July 2003 application.  (Exh. A, Exh. 9).  The Supreme Court has held that an employer's failure to promote is a discrete act, constituting a separate actionable "unlawful

employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify.") (emphasis added); see also Sanders, 319 F. Supp. 2d at 1310-11 (holding that challenged promotion decisions were "paradigmatic discrete acts").  "Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Morgan, 536 U.S. at 112.  Therefore, the Plaintiff's EEOC charge regarding her July 2003 MTP application does not make timely any allegations she may now wish to assert regarding her MTP application submitted on February 27, 2003.  Id. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180 . . . day time period after the discrete discriminatory act occurred.").

       **3.**       **The Plaintiff Cannot Establish A *Prima Facie* Case Of Race Or Age Discrimination With Respect To Her July 2003 and October 2003 MTP Applications**

       The Plaintiff's claims that she was not selected for the MTP in July and October 2003 because of her race and age likewise fail as a matter of law.  The Plaintiff cannot even establish a *prima facie* case of race or age discrimination.  To establish a *prima facie* case of race or age discrimination, the Plaintiff must prove that: (i) she belongs to a protected class; (ii) she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, she was rejected; and (iv) the position was filled with an individual outside the protected class.  See Vessels v. Atlanta Independent Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005); Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (11th Cir. 2004); see also Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002).

The Plaintiff fails to establish the fourth element of her *prima facie* case with respect to her alleged applications to the MTP in July and October because no one was even interviewed for the MTP out of District # 74 during those periods, much less selected for the program.  (Exh. B ¶¶ 7-8).  Because there were no Associates chosen for the MTP in District # 74 during the July or October 2003 MTP application periods, the Plaintiff cannot establish a *prima facie* case of discrimination, and her claims with respect to those periods are due to be dismissed.

**C.    The Plaintiff's Retaliation Claim Fails as a Matter of Law**

As with her race and age discrimination claims, the Plaintiff's retaliation claim fails because she cannot establish a *prima facie* case.  To establish a *prima facie* case of retaliation under either Title VII or the ADEA in the Eleventh Circuit, a plaintiff must show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."  Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).

**1.    The Alleged Retaliation Is Not Causally Related To The Plaintiff's EEOC Charge**

The Plaintiff's retaliation claim fails because she fails to establish that the alleged conduct about which she complains was causally related to the filing of her EEOC charge.  Indeed, the Plaintiff cannot even establish that much of the alleged retaliation was related in any way to her employment with Wal-Mart.  The Plaintiff claims that her cell phone was tapped and that a "listening device" was placed in her home, but fails to produce any evidence that either of these events occurred, much less that Wal-Mart was responsible for them.  She believes that her former boyfriend, Alphonzo Clark, or his friend and fellow Wal-Mart hourly associate, Danny Dorn, was responsible for placing the "listening device" and phone tap, but offers nothing but her own conjecture that this was the case.  (Exh. A p. 37, lines 9-14; p. 49, lines 20-23).  In any

17

event, the Plaintiff offers no evidence that either Clark or Dorn was aware that she had filed an EEOC charge.  (Exh. E ¶ 4).

The Plaintiff claims that neighborhood children failed to deliver Christmas merchandise that she had ordered in retaliation for filing her charge of discrimination with the EEOC.  Again, the Plaintiff has no evidence that these allegations were at all related to her employment with Wal-Mart, much less causally connected to the filing of her EEOC charge.  Accordingly, these claims are due to be dismissed.  <u>See</u> <u>McAdams v. Harvey</u>, No. 04-16263, 2005 U.S. App. LEXIS 13609, at *3-4 (11th Cir. July 6, 2005) (affirming summary judgment for defendant where plaintiff failed to establish causal connection between protected activity and alleged retaliation).

The Plaintiff also fails to establish a causal link between the alleged declination of her employee discount card on a single occasion and her EEOC charge.  The Plaintiff alleges that her discount card was declined shortly after she filed her EEOC charge, but she admits that it was fixed and she was able to use the card thereafter.  (Exh. A p. 204, lines 8-18; p. 205, lines 16-22; p. 207, lines 5-19).  To establish a causal connection by timing alone, a plaintiff must provide sufficient evidence of knowledge of the protected expression and that there was a very close temporal proximity between that knowledge and an adverse employment action.  <u>See</u> <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) ("mere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close.'").  The Plaintiff has not presented any evidence of who was responsible for the alleged declination, much less that such person was aware of the Plaintiff's EEOC charge.  Accordingly, the Plaintiff cannot establish that the temporal proximity of the alleged declination of her discount card and the knowledge of her protected activity was "very close."  <u>Id.</u>

Similarly, the Plaintiff has presented no evidence that her allegations of schedule changes and/or having her hours cut were in any way related to her EEOC charge.  As an initial matter, associate schedules at Wal-Mart Store # 356 are generated by a computerized scheduling system known as Preferred Scheduling.  (Exh. C ¶ 5).  Under the Preferred Scheduling system, the store is provided with computerized shifts created by the Wal-Mart's Home Office in Bentonville, Arkansas based on sales figures from the same time period in the prior year.  (Exh. C ¶ 5).  The Store inputs associate availability based on Schedule Availability forms completed by associates. (Moser ¶ 5).  The computer then generates associate schedules based on forecasted sales, associate availability and length of service.  (Exh. C ¶ 5).  Thus, both before and after her EEOC charge, the Plaintiff's schedule varied somewhat based on the forecasted sales for the period in question and the availability and length of service of other overnight stockers, as well as her own availability and length of service (Exh. C ¶ 5).

Moreover, in comparing the Plaintiff's pay and scheduling records before her charge was filed with those after, there is no noticeable difference in her scheduled days, her number of hours scheduled, or her pay.  (Exh. C ¶ 6).  Indeed, the only time after her charge of discrimination was filed that there appears to be any drop in hours was in the last three weeks of March 2004, five months after she filed her charge of discrimination on October 27, 2003.  (Exh. C ¶ 7).  In attempting to draw a connection between this decrease in hours and her charge of discrimination, the Plaintiff relies only on temporal proximity.  (Exh. A p. 219, lines 10-23 to p. 220, lines 1-2).  As a matter of law, the five-month delay between the Plaintiff's charge and the reduction in her hours is too remote to establish a causal link.  See Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (holding that a three-month delay between alleged retaliation and protected expression "does not allow a reasonable inference of a causal relation."); Meiners v.

Univ. of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) (finding a three-month lapse between the Plaintiff's protected activity and the adverse employment action "too far apart . . . to establish causation by temporal proximity alone"); Parks v. City of Chattanooga, 74 Fed. Appx. 432, 438 (6th Cir. 2003), cert. denied, 541 U.S. 963, 124 S.Ct. 1721 (2004) (where plaintiff's only evidence of causation was a two-month temporal proximity between her protected conduct and an adverse employment action, she could not support an inference of retaliation); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (noting that four-month time lapse between protected activity and adverse employment action was insufficient to demonstrate causation).

The Plaintiff also bases her claim that she was not paid for her unused vacation time on temporal proximity. (Exh. A p. 288, lines 14-20). However, pursuant to Wal-Mart policy, associates on leave are entitled to vacation pay only if it is requested. (Exh. C ¶ 8). The Plaintiff does not claim that she requested a check for her unused vacation pay until August 10, 2004, more than nine months after her charge of discrimination was filed. (Exh. A p. 94, lines 11-14; p. 95, lines 7-10). This nine-month delay does not allow a reasonable inference of causal relation to the filing of the Plaintiff's EEOC charge. See Higdon, 393 F.3d at 1220-21.

With respect to her claims of threats from coworkers and of coworkers following her around the store and pointing her out, the Plaintiff has provided no evidence that this alleged behavior was motivated by the filing of her EEOC charge. The Plaintiff has testified that she does not know why Alphonzo Clark or Mattie would make the alleged threats against her. (Exh. A p. 54, lines 4-8, 13-20; p. 251, lines 12-22). In fact, the Plaintiff has no evidence that any of the coworkers that engaged in the alleged retaliatory conduct even knew about her charge of discrimination. (Exh. A p. 263, lines 15-18; p. 268, lines 22-23 to p. 269, lines 1-4; p. 272, lines 13-23 to p. 273, lines 1-4; p. 274, lines 5-15). That others within the Wal-Mart organization

were aware of the Plaintiff's EEOC charge does not impute knowledge to the individuals against whom she alleges retaliation. See Bass v. Board of County Commissioners, 256 F.3d 1095, 1119 (11th Cir. 2001) ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression").

As further evidence that the Plaintiff's claims about her coworkers are wholly unrelated to the filing of her EEOC charge, she alleges that she was retaliated against when Danny Dorn called her on September 11, 2003, laughing on the phone and telling her that he thought she would be gone home by now. (Ayers Depo p. 288, lines 21-23 to p. 289, lines 1-3). This call was allegedly received more than a month before the Plaintiff submitted her charge to the EEOC on October 27, 2005. (Exh. A Exh. 9). Logically, retaliation can only occur after the plaintiff has participated in protected activity. See Pipkins v. City of Temple Terrace, 267 F. 3d 1197, 1201 (11th Cir. 2001)(no causal connection where alleged retaliation began before the plaintiff's protected expression); Webb v. Cardiothoracic Surgery Associates, 139 F. 3d 532, 540 (5th Cir. 1998) (no causal link and summary judgment affirmed on retaliation claim where rude treatment of the plaintiff began prior to her complaint of sexual harassment). The Plaintiff's retaliation claim, therefore, is premised on faulty logic and speculative theories, entitling Wal-Mart to summary judgment as a matter of law.

As for the Plaintiff's claim that she was retaliated against because she was not told that the time for the third-shift store meeting had changed, even she admits that a failure to notify her could have simply been an oversight or that she may not have been at work the day the meeting change was announced. (Exh. A p. 281, lines 7-10). Moreover, the Plaintiff does not claim that the meeting was changed because of her. ((Exh. A p. 280, lines 19-23 to p. 281, line 1). The

Plaintiff's claim of retaliation regarding the meeting time change is based only on the Plaintiff's speculation and is not sufficient to defeat summary judgment. See Fed. R. Civ. P. 56(e) (requiring that adverse party set forth "specific facts showing there is a genuine issue for trial.").

Because the Plaintiff has failed to establish a causal link between any of the alleged acts of retaliation and the filing of her EEOC charge, Wal-Mart is entitled to summary judgment on her retaliation claim. See McAdams, No. 04-16263, 2005 U.S. App. LEXIS 13609, at *3-4 (11th Cir. July 6, 2005) (affirming summary judgment for defendant where plaintiff failed to establish causal connection between protected activity and alleged retaliation).

**2.    The Plaintiff Did Not Suffer Any Adverse Employment Action**

Even if the Plaintiff's failure to establish a causal connection between her claims of retaliation and her EEOC charge could somehow be overlooked, her retaliation claim fails because most of the matters about which she complains do not rise to the level of adverse employment actions. The Eleventh Circuit has defined an adverse employment action as "'an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" Olson v. Lowe's Home Centers, Inc., 130 Fed. Appx. 380, 393 (11th Cir. 2005) (quoting Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)). "'Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality,' which is evaluated 'using both a subjective and an objective standard.'" Id. Although an adverse employment action need not rise to the level of an ultimate employment decision, there is a "threshold level of substantiality that must be met for unlawful discrimination to be cognizable

under the anti-retaliation clause." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). The alleged retaliation here does not meet that threshold level of substantiality.

There is no evidence that the Plaintiff's claims regarding her home and cell phone being tapped and neighborhood children failing to deliver Christmas merchandise have anything to do with her employment with Wal-Mart. Even if these fantastical claims were taken as true, they would not alter the Plaintiff's compensation, terms, conditions, or privileges of employment, or deprive her of employment opportunities, or adversely affect her status as an employee. Accordingly, by definition, these allegations cannot constitute adverse *employment* actions and the Plaintiff has failed to establish a *prima facie* case. Olson, 130 Fed. Appx. at 393.

The Plaintiff's allegations of receiving two threats from coworkers and being followed around the store also fall short of the adverse employment action standard. The Plaintiff has not provided any evidence that these allegations were related to her employment. Indeed, she has not even alleged that these incidents adversely affected her compensation, terms, conditions, or privileges of employment, or deprived her of employment opportunities, or adversely affected her status as an employee. Accordingly, these claims do not constitute adverse employment actions, and the Plaintiff's retaliation claim fails as a matter of law. See Bass v. Bd. of County Comm'rs., 256 F.3d 1095, 1118 (11th Cir. 2001) (stating that "conduct  that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action," but that "not everything that makes an employee unhappy is an actionable adverse action").

The Plaintiff's claim regarding the declination of her employee discount card similarly falls short of the level of substantiality necessary to establish an adverse employment action. By the Plaintiff's own admission, the problem with her discount card was fixed. (Exh. A p. 205, lines 16-22). She complains only that the process of correcting the problem took longer than

usual.  (Exh. A p. 207, lines 5-19).  This mere inconvenience alleged by the Plaintiff is not sufficient to establish that she suffered an adverse employment action.  See Medina v. Income Support Div., No. 04-2166, 2005 U.S. App. LEXIS 12786, *10-11 (10th Cir. June 28, 2005) ("an adverse employment action . . . does not include 'a mere inconvenience . . . .'"); Fairbrother v. Morrison, No. 03-9242-cv, 2005 U.S. App. LEXIS 11148, *42 (2nd Cir. June 14, 2005) (stating that adverse employment action is "more disruptive than a mere inconvenience"); Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005) ("Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action.") (citations omitted).

Likewise, the Plaintiff's claim that Assistant Manager Robert Claiborne would not clock her in on four days that she was not scheduled to work is nothing more than an inconvenience and does not rise to the level of substantiality necessary to constitute an adverse employment action.  The Plaintiff used alternative methods to get credit for the hours she worked on those days: she asked other managers to clock her in, then began filling out time adjustment sheets. (Exh. A p. 254, lines 7-14; p. 255, lines 14-17).  Additionally, after the Plaintiff met with Claiborne and Store Manager Shannon Moser, the Plaintiff admits that the situation was corrected.  (Exh. A p. 259, lines 19-23 to p. 260, lines 1-4; p. 260, lines 8-23).  Thus, the Plaintiff did not suffer any reduction in hours or wages because of Claiborne's brief refusal to clock her in on days she was not scheduled to work.

Likewise, the Plaintiff's allegation that she was not informed about the time change of the third shift store meeting is nothing more than an inconvenience.  She admits that she eventually learned of the time change and was able to attend.  (Exh. A p. 279, lines 22-23 to p. 280, lines 1-6).

### 3. The Plaintiff Has Not Established a Valid Retaliatory Harassment Claim

To the extent the Plaintiff attempts to state a claim for retaliatory harassment by her coworkers, she has failed to establish such a claim. As an initial matter, "the Eleventh Circuit has not conclusively determined whether or not harassment can constitute an adverse employment action." Perryman v. West, 949 F. Supp. 815, 819 (M.D. Ala. 1996) (citing Wu v. Thomas, 996 F.2d 271, 274 (11th Cir. 1993), cert. denied, 511 U.S. 1033 (1994)). However, even if harassment could constitute an adverse employment action in the Eleventh Circuit, "it is not sufficient, for a finding of an adverse employment decision, merely to find that harassing remarks were made, but rather, there must also be a finding that those remarks altered a term or condition of employment by either affecting work performance or by creating a hostile environment." Perryman, 949 F. Supp. at 820.

Additionally, as with any other type of retaliation, the Plaintiff must demonstrate that the alleged retaliatory harassment was related to the filing of her EEOC charge. As discussed above, the Plaintiff has presented no evidence that the coworkers at issue were even aware that she had filed a claim of discrimination. Without demonstrating a causal link to a protected activity, the Plaintiff cannot establish a *prima facie* case of retaliatory harassment. See, e.g., Merit v. Southeastern Penn. Transit Auth., 315 F. Supp. 2d 689, 709 (E.D. Pa. 2004) (granting summary judgment for defendant where plaintiff failed to establish a causal connection with respect to alleged coworker harassment).

Moreover, because the alleged harassment about which the Plaintiff complains was carried out by her coworkers rather than by supervisors, Wal-Mart can be held liable only if the Plaintiff can show that it knew or should have known about the alleged harassment and failed to

take prompt remedial action.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002).

The Plaintiff does not remember whether she complained about the alleged threat from "Mattie".  (Exh. A p. 260, lines 5-7).  She claims that she reported the alleged threat from Alphonzo Clark, but does not know if any action was taken and does not allege that any other threats were made against her.  That the alleged offending conduct ceased following her purported complaint is evidence that Wal-Mart's response was adequate.  See Adler v. Wal-Mart Stores, Inc., 144 F3d. 664, 676 (10th Cir. 1995) ("A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation.").

With regard to the associates who were allegedly following the Plaintiff around the store, following her into the restroom, and stating that she had AIDS, the Plaintiff testified that she asked Assistant Manager Sherman Alexander why she was being followed, and he told her he did not know.  (Exh. A p. 264, lines 8-23 to p. 266, lines 1-22).  The Plaintiff has not alleged that she made any other complaints about the alleged conduct to any manager at Store # 356, and she admits that she did not take advantage of Wal-Mart's toll-free number that can be used to report complaints.  (Exh. A p. 292, lines 8-11).  One vague question posed to Alexander about why the Plaintiff was being followed was not sufficient to put Wal-Mart on notice of the myriad conduct about which she now complains.  Yet, that is the only evidence of knowledge the Plaintiff has asserted. Accordingly, the Plaintiff has not carried her burden as to Wal-Mart's knowledge and Wal-Mart cannot be held liable for the alleged harassment of the Plaintiff by her coworkers.

**D.    The Plaintiff's Constructive Discharge Claim is Without Merit**

Because the Plaintiff cannot establish a *prima facie* case of retaliation, her constructive discharge claim also fails as a matter of law.  It is well established that the standard for proving

constructive discharge is higher than the standard for proving underlying hostile environment or retaliation claims. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001), cert. denied, 534 U.S. 1127 (2002); Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 301 (5th Cir. 2001); Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 48 (1st Cir. 1998) (holding that plaintiff's constructive discharge claim fails because he did not succeed on predicate hostile environment claim). That the conduct about which the Plaintiff complains is insufficient to state a claim for retaliation eliminates any possibility that she can demonstrate constructive discharge.

Moreover, to prevail on a constructive discharge claim, a plaintiff must show that her employer "deliberately created intolerable working conditions with the intention of forcing her to quit, and that she did quit." Cole v. May Dep't Stores Co., 109 Fed. Appx. 839, 841-42 (8th Cir. 2004); see also Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900, 905 (11th Cir. 1988) ("A constructive discharge claim can result when 'the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation . . . .") (quoting Young v. Southwestern Sav. & Loan Assoc., 509 F.2d 140, 144 (5th Cir. 1975). The Plaintiff did not resign; she was terminated after she did not return from a leave of absence. (Wal-Mart's Notice of Unavailability of Stocker Position ¶¶ 3-4).

Even if the Plaintiff's requested leave of absence could be treated as a resignation for purposes of her constructive discharge claim, that she was not constructively discharged is made clear by her admission that it was her mother's illness that caused her to request a leave of absence. (Exh. A p. 82, lines 4-9, Exh. 7). Obviously, there can be no constructive discharge when an employee is motivated by reasons other than intolerable and illegal discrimination. See, e.g., Cole, 109 Fed. Appx. at 842 (affirming summary judgment on constructive discharge claim

where evidence showed plaintiff did not return to work because "she was the only caretaker for her terminally ill daughter, her daughter's four children, and her invalid mother").

Moreover, the Eleventh Circuit uses an objective standard in analyzing constructive discharge claims, ignoring the plaintiff's subjective feelings. See Hipp v. Liberty Nat'l Life Ins., Co., 252 F.3d 1208, 1231 (11th Cir. 2001) ("The threshold for establishing constructive discharge in violation of ADEA is quite high. In evaluating constructive discharge claims, we do not consider the plaintiff's subjective feelings. Instead, we employ an objective standard."). Consequently, the Plaintiff "must demonstrate that [her] working conditions were 'so intolerable that a reasonable person in [her] position would have been compelled to resign.'" Id. (quoting Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997)). The Plaintiff claims that she was constructively discharged because her hours and wages were cut. (Plaintiff's Motion for Summary Judgment, p. 9, lines 5-7). However, there was no noticeable decrease in the Plaintiff's hours or wages until the week of March 13-19, 2004. (Exh. C ¶¶ 6-7). The Plaintiff requested a leave of absence to care for her mother on March 22, 2004. (Exh. A p. 81, lines 11-23). Therefore, there were only nine days of decreased hours/wages before she requested leave. Even if the Plaintiff's leave could be considered a resignation for purposes of her constructive discharge claim, a resignation based on only nine days of decreased hours/wages does not meet the objective, "reasonable person" standard, particularly when the Plaintiff did not complain about the decrease. See Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990) ("a reasonable employee instead of resigning would first have pursued either or both of two courses -- completed the internal grievance procedure, or filed a complaint with the EEOC."); Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987) ("Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too

28

fast.")  Because a reasonable person in the Plaintiff's position would not have felt compelled to resign, the Plaintiff's claim of constructive discharge must fail.

V.    **CONCLUSION**

The Plaintiff's claims of age and race discrimination fail as a matter of law because she did not fulfill all administrative conditions precedent to bringing claims regarding the January 2003 MTP application period.  She cannot establish a *prima facie* case of discrimination for the July and October application periods because no one was selected to the program at those times.  Likewise, the Plaintiff has not established a *prima facie* case of either retaliation or constructive discharge.  Moreover, the Plaintiff's motion for summary judgment is based on nothing more than speculation, conclusory allegations, and legal conclusions.  Accordingly, Wal-Mart's Motion for Summary Judgment should be granted.


s/ Jennifer F. Swain
Jennifer F. Swain
Bar Number: ASB-7761-I67-J
Email: jfs@jbpp.com

s/ Alan D. Mathis
Alan D. Mathis
Bar Number: ASB-8922-A59M
Email: adm@jbpp.com

Attorneys for Defendant
Wal-Mart Stores East, LP


**OF COUNSEL:**

**JOHNSTON BARTON PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone: (205) 458-9400
Facsimile: (205) 458-9500

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify the above and foregoing has been served on the Plaintiff, by United States Mail, first-class, postage-prepaid and properly addressed on this, the 4th day of August, 2005:

      Wanda Denise Ayers
      1420 Pauline Street
      New Orleans, Louisiana 70117


                        s/ Jennifer F. Swain
                        Of Counsel


W0518870.DOC