IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA DENISE AYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  3:04cv1002-T |
| | ) | [WO] |
| WAL-MART CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on the parties' cross-motions for summary judgment (Docs. # 35, 40) on the plaintiff's ["Ayers"] complaint of race and age discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.* (2005) ["Title VII"], and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 *et seq.* (2005) ["ADEA"].  Having reviewed the parties' pleadings, briefs and evidentiary submissions, the magistrate judge recommends that Ayers's motion for summary judgment be denied and Wal-Mart's motion for summary judgment be granted in part and denied in part.

## I.    FACTS AND PROCEDURAL HISTORY

The following relevant facts are undisputed.  In November 2001, Ayers began working for Wal-Mart as a stock clerk on the midnight shift (Def's Ex. A, Ayers's Dep. ["Def's Ex. A"], p. 113).  In 2003, she submitted at least two applications for admittance into

Wal-Mart's management training program ["MTP"] (Doc. 35-1, p. 11; Def's Ex. B, Decl. of

Don Bost ["Def's Ex. B"], ¶¶ 6-8). She was not interviewed for the positions, and she filed

a charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"].

On 22 March 2004, Ayers requested a four-month leave of absence from Wal-Mart to care

for her mother, who had been hospitalized (Def's Ex. A-5, p. 1; Doc. # 35-19, p. 6).[1] She did

not return to work after her shift on 24 March 2004.

On 25 August 2004, the EEOC informed Ayers of her right to sue (Doc. 1, pp. 15-16),

and Ayers, who is proceeding *pro se*, filed this lawsuit claiming that Wal-Mart discriminated

against her on the basis of her race, African-American, and age, at the relevant times 44 and

45, when they did not promote her into the MTP on three separate occasions in 2003 (Doc.

# 1).[2] Ayers also contends that Wal-Mart retaliated against her after she filed her EEOC

---

[1] Much of the evidence in this case has been duplicated by the parties. Ayers's submissions, however, have not been consecutively labeled. Furthermore, many are incomplete. For example, Ayers's first set of exhibits numbered five and six include only the first page of police reports which allegedly support her retaliation claim, whereas Wal-Mart has submitted both pages. Therefore, where the parties have submitted duplicate exhibits, the court cites to Wal-Mart's submissions.

[2] At least, this is the court's understanding of the claims, which she described as follows in her complaint:

> Plaintiff was unlawfully discriminated against by the Agency on the basis of race and age when (1) Plaintiff was not selected for the management trainee program on and about April 2003 when a white female, younger then [sic] plaintiff was selected and no reason given for plaintiff's non-selection as well as [sic] unlawfully destroying her computer generated application; (2) when on or about July, 2003, she was not informed that the management trainee position she applied for was cancelled due to no vacancy but a month later the position was re-announced; (3) of which complainant [sic] applied for the vision center manager position and management trainee position again for the third time and has not been notified to this day of the result of her applications.

(Doc. # 1, p. 6).

charge, harassed her and eventually constructively discharged her by reducing her hours to such an extent that she was unable to meet her financial obligations (Doc. # 29). Wal-Mart contends that Ayers has failed to exhaust her administrative remedies or present a *prima facie* case of age or race discrimination (Docs. # 42, 45).

During the course of this litigation, Ayers filed a motion for summary judgment and provided evidence in support thereof (Doc. # 35). As explained in an earlier order, the court construes Ayers's motion as a response to Wal-Mart's subsequent motion and treats Wal-Mart's motion similarly (Doc. # 37). In addition, Ayers supplemented her motion by filing a separate response (Doc. # 44) to which Wal-Mart has replied (Doc. # 45).

## II.   STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Green v. Pittsburgh Plate and Glass Co*., 224 F. Supp. 2d 1348, 1352 (N.D. Ala. 2002) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 259. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the

nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id*.

at 255.

On a motion for summary judgment, the court is to construe the evidence and factual

inferences arising therefrom in the light most favorable to the nonmoving party.[3] ***Adickes***

***v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970); ***Mize v. Jefferson City Bd. of Educ.***, 93 F.3d

739, 742 (11th Cir. 1996). Notwithstanding this advantage, a nonmoving plaintiff bears the

burden of coming forth with sufficient evidence on each element that must be proved.[4]

***Earley v. Champion Intern. Corp.***, 907 F.2d 1077, 1080 (11th Cir. 1990); *see Celotex*, 477

---

[3] The Supreme Court explained that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted).

[4] "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the court must] grant summary judgment [for the defendant]." ***Earley***, 907 F.2d at 1080 (citations omitted). In ***Earley***, the Court of Appeals further emphasized:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." ***Anderson***, 477 U.S. at 252.
> ***
> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249-50 (citations omitted) (emphasis added); *accord* ***Hudson v. Southern Ductile Casting Corp.***, 849 F.2d 1372, 1376 (11th Cir. 1988).

*Earley*, 907 F.2d at 1080-81.

U.S. at 322-23. When faced with a properly supported motion for summary judgment, a plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. Although the evidence need not be in a form necessary for admission at trial, *id.*, unsupported, self-serving allegations are insufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

## III.    DISCUSSION

### A.    *Administrative Remedies*

Ayers contends that Wal-Mart discriminated against her when it did not select her for an interview or promotion into the MTP, for which she claims to have applied in February,[5] July and October 2003 (Doc. # 1). Wal-Mart responds that Ayers failed to exhaust her administrative remedies, at least with respect to her February and October applications, because her charge failed to mention either application (Doc. # 41, pp. 19-21). Furthermore, Wal-Mart argues that her charge, as it may have related to her February application, was not

---

[5]The exact date of Ayers's first application in 2003 for a position in the MTP is the source of some confusion for everyone involved in this case, including the EEOC and the court. Her letter of complaint about Wal-Mart, which she sent to the EEOC, did not refer by date to an application preceding her July application, as discussed more fully *infra* (Docs. # 4, pp. 16-21; 44-9, p. 2). Ayers recalled submitting the earlier application "on or around" March (Docs. # 1, ¶ 1; 4 ¶ 3), and the EEOC sent Ayers correspondence suggesting its understanding that she applied *for* a MTP position in March (Doc. # 4, p. 42). Evidence before the court establishes, and the parties agree, that she first applied in February for a position first posted in January (Docs. # 35-1, p. 1; 42, ¶ 6; 44-9, p. 2-4). The MTP for this application period was to begin in April (Docs. # 41, p. 8; 42-19, p. 2). Undoubtedly, Ayers's lack of legal representation and poorly drafted submissions to the EEOC and this court have generated and perpetuated the confusion, but evidence also suggests that the EEOC investigator was incommunicative (Doc. # 1, pp. 18-22).

timely.  *Id.*

Although apparently overlooked by Wal-Mart, Ayers has submitted evidence that she

mailed an informal complaint dated 20 September 2003 (Doc. # 4, pp. 16-21, 35, 39).  To

analyze Ayers's compliance with administrative requirements, the court must first determine

whether her letter constitutes a charge of discrimination.[6]  If it does, the court must then

determine whether her failure to mention specifically either her February or October

applications in either the letter or the subsequent formal charge bars further consideration of

the relevant claims.  The court's conclusions on these matters controls the resolution of the

timeliness issue.


1.      **Ayers's Charge of Discrimination**

In accordance with both Title VII and the ADEA, a plaintiff alleging employment

discrimination must first file a charge with the EEOC within 180 days from the time the

plaintiff should reasonably have known of the facts that would support her claim.  42 U.S.C.

§ 2000e-(5)(e) (2005); 29 U.S.C. § 626(d) (2005);  ***Gregory v. Ga. Dep't of Human Res.***,

---

[6]The court makes no finding regarding the admissibility of Ayers's letter for trial purposes, and Wal-Mart has not objected to the letter's admissibility or provided the court any reason for questioning its authenticity for summary judgment purposes. *See **Rayborn v. Auburn Univ.***, 350 F. Supp. 2d 954, 958 (M.D. Ala. 2004) (stating that evidence for summary judgment purposes need not be "in a form necessary for admission at trial"); ***U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.***, 296 F. Supp. 2d 1322, 1327 n.2 (S.D. Ala. 2003) (noting that the lack of dispute suggests agreement that the questionable evidence could "be reduced to admissible, authenticated form at trial"); ***Hill v. Manning***, 236 F. Supp. 2d 1292, 1297 (M.D. Ala. 2002) (assuming that the evidence could be "reduced to admissible form at trial" when the plaintiff could testify to its authenticity and it was not otherwise objectionable).  Moreover, the letter would not be considered hearsay for purposes of establishing its contents or that it was in fact sent to the EEOC. FED. R. EVID. 801(c).

355 F.3d 1277, 1280 (11th Cir. 2004) (Title VII); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d

1023, 1025 (11th Cir. 1994), *reh'g en banc denied* 24 F.3d 256 (11th Cir. 1994) (applying

"equitable modification" in a Title VII case and stating that the "limitations period does not

start to run until all the facts which would support a charge of discrimination are apparent or

should be apparent to a person with a reasonably prudent regard for his rights"); *Robinson*

*v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070 (M.D. Ala. 2003). This requirement, as well

as the exhaustion requirement in general, ensure that the EEOC has "the first opportunity

to investigate the alleged discriminatory practices to permit it to perform its role in obtaining

voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279

(quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).

Moreover, "the charge requirement serves to notify the employer of the allegations made

against it." *Daniels v. Mobile Register, Inc.*, No. Civ. A. 04-0832, 2005 WL 1505856 (S.D.

Ala. June 24, 2005) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir.

2001); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238-39 (11th Cir. 2004)).

Assuming the complainant has fulfilled her filing obligation (among other

administrative requirements not relevant here) and may file a lawsuit in a federal district

court, the scope of the lawsuit generally is "limited by the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge . . . ." *Mulhall v. Advance Sec.,*

*Inc.*, 19 F.3d 586, 589 (11th Cir. 1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d

455, 460 (5th Cir. 1970)); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985).

Charges filed with the EEOC "shall be in writing under oath or affirmation and shall

contain such information and be in such form as the Commission requires." 42 U.S.C.A. §

2000e-5 (2005).[7]  The regulations governing claims of race discrimination require charges

to be "in writing and signed and . . . verified."  29 C.F.R. § 1601.9 (2005).  Moreover,

> (a) Each charge should contain the following:
> (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;
> (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);
> (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be;  and
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

> (b) Notwithstanding the provisions of paragraph (a) of this section, *a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe <u>generally</u> the action or practices complained of.*  A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  *Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.*  A charge that has been so amended shall not required to be redeferred.

---

[7]The ADEA does not include a parallel verification requirement. *See* 29 U.S.C. § 621 *et seq.*

29 C.F.R. § 1601.12 (2005) (emphasis added); *see also* ***Edelman v. Lynchburg Coll.***, 535 U.S. 106 (2002) (upholding, unanimously, subsection (b) and holding that an untimely but verified charge of discrimination could relate back to an otherwise valid but unverified letter that provided the requisite information). Aside from verification, the substantive requirements for charges alleging claims under the ADEA are virtually identical. *See* 29 C.F.R. §§ 1626.6, .8 (2005).

These requirements are to be construed liberally to give effect to the purpose underlying the respective acts.[8] 29 C.F.R. §§ 1601.34, 1626.22; *see also* ***Green v. Elixir Indus.***, 407 F.3d 1163, 1167 (11th Cir. 2005) (instructing that "courts must be 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]'" (quoting ***Gregory***, 355 F.3d at 280)); ***Wilkerson***, 270 F.3d at 1318 (describing the "requirements for a charge" as "very minimal" (quoting ***EEOC v. Mississippi Coll.***, 626 F.2d 477, 483 (5th Cir. 1980)); ***Tillman v. City of Boaz***, 548 F.2d 592, 594 (5th Cir. 1977) ("Charges filed with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings and who usually do not have the assistance of an

---

[8] The broader purpose of both the ADEA and Title VII has been described as "the elimination of discrimination in the work place." ***Wallace v. Dunn Const. Co., Inc.***, 62 F.3d 374, 378 (11th Cir. 1995) (quoting ***McKennon v. Nashville Banner Publ'g Co.***, 513 U.S. 352 (1995)) (internal quotation marks omitted). This parallelism has compelled the Eleventh Circuit Court of Appeals to "apply legal standards developed in Title VII and ADEA cases interchangeably." ***Pennington v. City of Huntsville***, 261 F.3d 1262, 1269 (11th Cir. 2001) (citing ***Chapman v. AI Transport***, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)); *see also*, *e.g.*, ***Morrison v. Amway Corp.***, 323 F.3d 920 (11th Cir. 2003) (intermingling Title VII and ADEA analysis); ***Kelliher v. Veneman***, 313 F.3d 1270 (11th Cir. 2002) (same).

attorney.").[9] Nevertheless, the charge must evidence "an intent to activate the administrative process." **Bost**, 372 F.3d at 1240; **Wilkerson**, 270 F.3d at 1321.

Whether a writing other than a formal charge is sufficient depends upon the nature of the information provided and the reaction of the EEOC. **Daniels**, 2005 WL 1505856 at *7 (citing cases within the Eleventh Circuit addressing the issue). This court has found that a letter that "discuss[ed] in detail the two promotions that [the plaintiff] allegedly was denied, as well as the retaliatory acts allegedly taken against him for objecting to what he believed was an age-based decision not to promote him," named the alleged wrongdoers and was treated as a charge by the EEOC satisfied the charge requirements. **Brook v. City of Montgomery, Ala.**, 916 F. Supp. 1193, 1202 (M.D. Ala. 1996). That level of detail, however, is not necessary. A slightly more recent case found sufficient a letter that stated merely, "I hereby file a complaint against Alabama State University, [address and phone number]." **Moore v. Ala. State Univ.**, 945 F. Supp. 235, 239 (M.D. Ala. 1996).

Ayers's letter discusses in sufficient (though somewhat incomprehensible) detail the circumstances surrounding her failed efforts to get promoted and her belief that her age and race were material factors influencing her employer's decision making.[10] Although she refers specifically only to her July application, she clearly references a prior attempt (Doc. # 4, p.

---

[9]In **Bonner v. Prichard**, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[10]She also noted "gender" discrimination on the first page of her letter, but this is not discussed elsewhere. The court assumes that she has apparently abandoned this claim, but even if she has not, there is no gender claim before the court in this case.

17), and she provides very specific details about her employer (i.e., "Wal Mart Super Store in the Auburn, store [sic] no. 356, 1717 S. College Street, Auburn Al 36830" [sic]) as well as the names of persons allegedly involved, including the store manager, Sherman Alexander ["Alexander"], and the key decision maker, presumably, Ayers's district manager Don Bost ["Bost"] (Def's Ex. B, ¶ 3). Thus, the information provided met the EEOC's requirements for a charge, 29 C.F.R. §§ 1601.12(b); 1626.6, .8, as well as the standards imposed by this court. Furthermore, the verbiage indicates Ayers's intent to initiate an administrative investigation.

In response to this letter, the EEOC completed a formal charge of discrimination, which it then sent to Ayers, accompanied by a letter indicating the agency's understanding that she had complained of acts prohibited by Title VII and the ADEA (Doc. # 4, p. 39). An EEOC charge number was included on both the completed form and the letter, and the form's description of events included the details of Ayers's July application, a reference to the previous application and references to Alexander and Bost (Docs. # 4, p. 39; 42-11, p. 1).

As the U.S. Supreme Court has noted, this is common practice for the EEOC, and it demonstrates that the EEOC treated Ayers's letter as a charge. *See **Edelman**, 535 U.S. at 115 n.9; see also **Daniels**, 2005 WL 1505856 at *7 (finding that the EEOC did not treat the plaintiff's letter as a charge when it "did not draft a formal charge for plaintiff to execute based on the allegations contained in the January 2004 letter"); **Brook**, 916 F. Supp. at 1202 (finding that the EEOC treated an informal letter as a charge when it assigned the letter a

"charge number").[11]  Thus, this case is easily distinguished from *Bost*, in which the Court of Appeals held that an EEOC intake questionnaire and affidavit were not sufficient, under the circumstances, to constitute a charge. 372 F.3d at 1239-42.[12]    Therefore, Ayers's letter preceding her formal charge constitutes a charge, and the formal charge relates back to the date Ayers filed her letter. 29 C.F.R. §§ 1601.12(b); 1626.6, 8.

The court must next determine whether the circumstances surrounding her February and October applications would have fallen within the scope of a reasonable investigation into the allegations in her charge. *Mulhall*, 19 F.3d at 589; *Griffin*, 755 F.2d at 1522.

---

[11]    The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified.  The complainant must submit a verified charge before the agency will require a response from the employer.

Respondent argues that the employer will be prejudiced by these procedures because 'there would be no deadline for verifying a charge.'  But this is not our case, which simply challenges relation back *per se*, and our understanding is that the EEOC's standard practice is to caution complainants that if they fail to follow up on their initial unverified charge, the EEOC will not proceed further with the complaint.

*Edelman*, 535 U.S. at 115 n.9.

[12]The *Bost* court partly focused on the EEOC's failure to forward the information to the employer, but it did not hold that such failure was dispositive.  Moreover, although EEOC action is a factor considered in this circuit in determining whether an informal charge is sufficient, the Court of Appeals has not yet fully explored the rationale underlying this practice, and the relevancy of such information is subject to debate. *Edelman v. Lynchburg College*, 300 F.3d 400 (4th Cir. 2002) (holding, on remand from the Supreme Court, that the EEOC's failure to assign an informal charge an "EEOC number" or "forward a copy to the College" were "not deficiencies in the charge; they are failures of the EEOC to carry out its responsibilities under Title VII"); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099-1100 (9th Cir. 2002) ("The EEOC's failure to address a claim asserted by the plaintiff in her charge has no bearing on whether the plaintiff has exhausted her administrative remedies with regard to that claim."); *see also Sims v. Trus Joint MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994) ("Title VII 'does not condition an individual's right to sue upon the EEOC's performance of its administrative duties." (quoting *Jefferson v. Peerless Pumps Hydrodynamic Div. of FMC Corp.*, 456 F.2d 1359, 1361 (9th Cir. 1972))), *quoted in Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1570-71 (11th Cir. 1996).

Leading to her discussion of her July application, Ayers's letter provided:[13]

> It was stated that Wal Mart Company is looking for women and monitory, which I'm both but I'm over 40. My supervisor at the time encourage me and asked that I apply for the management program which I did and was turn down with no explanation from top level management. I asked what is it that I need to do. I have work experience with in the time that is required, I have some education, and I have been a leader in my department for the passed two years.
>
> It was announced *again* that the management-training program is taking application and I try to apply at our store. . . . It was getting close to the cut off date so after work I drove over to the Opelika store on July 21, 2003 I asked the manager there could I apply at their store because the managers at our store could not pull [the electronic application] up on the system and the deadline was coming up soon.

(Doc. # 4, p. 17) (emphasis added).

The formal charge prepared by the EEOC and verified by Ayers provided some of the same detail regarding Ayers's July application and noted, "Prior to this I was turned down before in lieu of a Younger White Female who was also hired after me" [sic] (Doc. # 42-11, p. 1). Additional correspondence further evidences the EEOC's awareness regarding Ayers's earlier application, though the agency apparently understood her to be claiming that she had submitted her application in March when, in fact, she had done so on the last day of February (Doc. # 4, p. 42).

Although Ayers's letter was clear about very little, it was sufficient to inform the

---

[13]The number of grammatical, punctuation and spelling errors in the following paragraph counsels against using "sic" and in favor of simply noting that the passages are quoted exactly as they appear in Ayers's letter, except for the ellipses and bracketed information. This disclaimer applies to any quotes from documents presumably drafted by Ayers, who is a college graduate (Doc. # 35-14, p. 2).

EEOC's investigation of Wal-Mart's failure to promote her prior to July 2003. The EEOC's failure to find evidence regarding her application says less about the information Ayers provided than it does about the reasonableness of the investigation. Accordingly, Ayers's failure to specify the date of her previous application does not bar her claim that Wal-Mart discriminated against her when it did not promote her into the MTP scheduled to begin in April.

The same cannot be said for her alleged October application, however. Nothing in either her letter or the formal charge suggests that Ayers applied and was turned down for a promotion after her July 2003 application. While this may allow the court to conclude that this claim is therefore barred,[14] the court need not decide the matter on these grounds because a finding on the merits of Ayers's claim leads to the same conclusion.

## 2.    Timeliness of Ayers's Charge

Wal-Mart's argument relies on the fact that Ayers's formal charge was not received until 27 October (Doc. # 45, p. 3). *See* 29 C.F.R. § 1601.13(a)(1) ("Charges . . . are filed with the Commission upon receipt."); ***Henry v. Colonial Baking Co. of Dothan***, 952 F.

---

[14]*Contrast **Robinson v. Regions Fin. Corp.***, 242 F. Supp. 2d 1070, 1079-80 (M.D. Ala. 2003) ("While it is true that Claims C and D are the same as Claim B in that all three involve a failure to promote, the similarity ends there and that similarity is not enough to allow Robinson to include Claims C and D in her lawsuit.") *with **Turner v. Orr***, 804 F.2d 1223, 1226 (11th Cir. 1986) (finding that a failure to promote subsequent to the filing of a general charge alleging discriminatory promotion practices "could reasonably be expected to grow out of" the original charge when the underlying facts were similar and the subsequent act occurred during the course of the administrative investigation), *cited in **Butler v. Matsushita Commc'n Indus. Corp. of U.S.***, 203 F.R.D. 575 (N.D. Ga. 2001) ("Because the original charge alleged discriminatory denials of promotions, the investigation into MCUSA could reasonably be expected to include investigation of future denials of promotions as long as the case was still pending before the EEOC.").

Supp. 744 (M.D. Ala. 1996) (same).  Thus, Wal-Mart argues, any of Ayers's claims arising before 30 April 2005 are time barred. *Id.*

Ayers alleges that she was informed about the denial of her application for promotion on 29 April, which, according to Wal-Mart's calculation, would nevertheless be one day too late (or too soon, as Wal-Mart would content).[15]  As already discussed, however, her formal charge relates back to her informal letter, which, it can be inferred, was received well before 27 October.  Therefore, assuming Ayers's contention to be true, a reasonable fact finder could conclude that her charge was timely filed.[16]  Wal-Mart's motion should therefore be denied in part.[17]

**B.     *The Merits of Ayers's Claims***

Wal-Mart contends that Ayers has failed to provide evidence sufficient for a reasonable fact finder to conclude that:

1.     Wal-Mart's decision not to interview or promote her in either July or October was the result of discriminatory animus;

2.     Any perceived retaliatory actions were causally related to Ayers's EEOC charge; or

---

[15]Until filing her response to Wal-Mart's motion, Ayers contended that she was informed sometime in "or around" April 2003.  Her deposition testimony is equally vague (Def's Ex. A, p. 131) ("I think it was in, like, April . . ..").

[16]Wal-Mart's only argument concerning Ayers's February application is that she failed to exhaust her administrative remedies.

[17]The existence of this dispute also precludes the court from granting Ayers's motion in part.

15

3.    Ayers's was constructively discharged.

(Doc. # 41).  The court agrees.

Ayers's has not produced any direct evidence of discrimination; therefore, her claims under both Title VII and ADEA must be analyzed according to the burden-shifting framework set forth in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792 (1973); *see also*, *e.g.*, ***Pennington***, 261 F.3d at 1269.  To survive summary judgment, she must first present a *prima facie* case, which means, generally, that she must demonstrate that she was a qualified member of a protected class and was treated differently than similarly situated persons outside her protected class.  ***Wilson v. B/E Aerospace, Inc.***, 376 F.3d 1079, 1087 (11th Cir. 2004).  "The methods of presenting a *prima facie* case are not fixed; they are flexible and depend to a large degree upon the employment situation."  *Id.*

Assuming she is able to demonstrate a *prima facie* case, the burden shifts to Wal-Mart to "*articulate* a legitimate, nondiscriminatory reason for its" allegedly discriminatory actions. *Id.* (emphasis added).  If Wal-Mart can do this, the burden shifts back to Ayers

> to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. **[*Tex. Dep't of Comty. Affairs v.*] *Burdine***, 450 U.S. [248,] 255-56 [(1981)].
>
> If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  ***Chapman* [*v. AI Transp.*]**, 229 F.3d [1012,] 1030 [(11th Cir. 2000)].  Quarreling with that reason is not sufficient. *See id.*  The evidence may include, however, the same evidence offered initially to establish the prima facie case. ***Combs* [*v. Plantation Patterns*]**, 206 F.3d [1519,] 1528 [(11th Cir. 1997)].

16

> Despite the shifting of the burden of production between the plaintiff and the defendant under the ***McDonnell Douglas*** framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." ***Burdine***, 450 U.S. at 253.

***Wilson***, 376 F.3d at 1087-88.

Ayers has utterly failed to provide evidence that could lead a reasonable trier of fact to conclude that she was the victim of race or age discrimination.[18]  While the court is tempted to end its opinion with this statement, an explanation, however brief, may help to provide some closure.

## 1.      Failure to Promote

Ayers may establish a *prima facie* case of discrimination on her failure to promote claims by demonstrating the following:

1.      she is a member of a protected class;

2.      she was qualified for the positions for which she applied;

3.      she was not selected for the position(s); and

4.      a person or persons not members of her protected class were selected for the position(s).

*See*, *e.g.*, *id*.; ***Walker v. Mortham***, 158 F.3d 1177, 1185-93 (11th Cir. 1998) (discussing the

---

[18]The court refers only to Ayers's claims regarding events following those related to her February application.  Wal-Mart has not challenged the merits of her earliest claim.  *See supra* note 17.

17

elements of a *prima facie* case and holding that the plaintiff need not demonstrate relative qualifications).

Assuming Ayers has satisfied the first three requirements, the record is devoid of any evidence that persons outside of her class were selected for the positions she sought in July and October. In fact, she offers no evidence that positions were available or that someone was selected for those positions. Perhaps this is so because, as Wal-Mart contends, no one from Ayers's district was selected for the MTP during these periods "because there were no job vacancies to be filled at that time" (Def's Ex. B, ¶¶ 7, 8). In any case, the only evidence Ayers has submitted actually proves this to be true, at least with respect to her July application (Doc. #44-9, p. 10).[19] Wal-Mart's motion is therefore due to be granted.

## 2.    Retaliation

To present a *prima face* case of retaliation under Title VII and the ADEA, Ayers must demonstrate that:

1.    she engaged in protected activity;

2.    she suffered an adverse employment action;[20] and

---

[19]Notably, Ayers provides no evidence that she even applied for the October position, and Wal-Mart contends that she did not (Doc. 41, p. 8; Def's Ex. B, ¶ 8). Ayers did submit a signed copy of a "Job Description" for a "Management Trainee" position upon which someone wrote by hand the date 23 October 2003 (Pl's Ex. 4, p. 5). This document, however, is not part of the application (Pl's Ex. 13, p. 2) and is simply not probative of whether Ayers actually filed an application.

[20]    An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of her employment opportunities, or adversely affects his or her status as an

3.    the adverse action was causally related to the protected expression.

*See, e.g.*, ***Weeks v. Harden Mfg. Corp.***, 291 F.3d 1307, 1311 (11th Cir. 2002) (citing ***Pipkins v. City of Temple Terrace, Fla.***, 267 F.3d 1197, 1201 (11th Cir. 2001); ***Lucas v. W.W. Grainger, Inc.***, 257 F.3d 1249, 1260 (11th Cir. 2001); ***Wideman v. Wal-Mart Stores, Inc.***, 141 F.3d 1453, 1454 (11th Cir. 1998)).

Ayers contends that she was harassed and that her hours, and therefore pay, were reduced to such an extent that she had no choice but to terminate her employment by taking a voluntary leave of absence,[21] all in retaliation for her filing the EEOC charge.[22]

In support of her scheduling claim, Ayers offers only a computer-generated schedule which reflects that Ayers did not work during the third week of March (Doc. # 44-12, p. 32), which immediately preceded her request for a leave of absence and which temporally

---

employee." ***Robinson v. City of Pittsburgh***, 120 F.3d 1286, 1300 (3d Cir. 1997) (citation and internal marks omitted).  Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause." ***Wideman v. Wal-Mart Stores, Inc.***, 141 F.3d 1453, 1456 (11th Cir. 1998).

***Gupta v. Fla. Bd. of Regents***, 212 F.3d 571, 587 (11th Cir. 2000).

"Constructive discharge qualifies as an adverse employment decision." ***Poole v. Country Club of Columbus, Inc.***, 129 F.3d 551, 553 n.2 (11th Cir. 1997) (citing ***Maddow v. Procter & Gamble***, 107 F.3d 846, 852 (11th Cir. 1997); ***Stamey v. So. Bell Tel. Co.***, 859 F.2d 855, 859-60 (11th Cir. 1988).  "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" ***Poole***, 129 F.3d at 553 (quoting ***Thomas v. Dillard Dep't Stores, Inc.***, 116 F.3d 1432, 1433-34 (11th Cir. 1997)).

[21]As will become clear, it is unnecessary for the court to determine whether Ayers's leave of absence could qualify as constructive discharge.

[22]Filing an EEOC charge is protected activity. 42 U.S.C. § 2000e-3 (2005); *see also, e.g.*, ***E.E.O.C. v. Total Sys. Servs.***, 221 F.3d 1171, 1174 (11th Cir. 2000).

coincided with a trip to New Orleans (Doc. # 35-19, p. 6). Wal-Mart does not dispute this fact, but Ayers offers no evidence that anyone from Wal-Mart interfered with her schedule.[23] Thus, the court's conclusion that Wal-Mart, or its employees or agents, reduced her hours would be based on nothing more than guesswork. The unknown person's reasons for doing so would similarly be the result of gross speculation. Neither route affords Ayers an entitlement to relief.

Accepting as true the other allegedly retaliatory actions, many of which seem

_____

[23]Ayers's contention that Wal-Mart reduced her scheduled working hours, in general, is simply not supported by the evidence. On the contrary, the evidence unquestionably establishes that between September 2003, when she claims to have filed her EEOC charge, until approximately the third week of March 2004, her hours actually increased on average.

The portion of the earnings history report that Ayers submitted indicates that during each of the 14 pay periods beginning in and following the first two weeks of September 2003, Ayers worked an average of 92.83 hours, with a minimum of 72 hours and a maximum of 104.06 hours (Doc. # 44-6, pp. 3-7) In contrast, she worked an average of only 84.7 hours during each of the 14 pay periods leading up to September 2003, with a minimum of 57.05 and a maximum of 103.08. *Id.* Ayers testified at her deposition that these reports do not reflect the number of hours for which she was actually scheduled and that she worked on days for which she was not scheduled to compensate for the time Wal-Mart's actions cost her (Def's Ex. A, pp. 206-226). Evidence submitted by Ayers does not buttress this contention either. An "Attendance Tracking Maintenance Report" indicates that, after filing her EEOC charge, from October 2003 to February 2004, Ayers worked 11 shifts for which she had not been scheduled (Doc. # 35-7, p. 7). During the five months preceding the alleged filing of her charge, Ayers worked 11 shifts for which she had not been scheduled (Doc. # 35-7, pp. 6-7).

In March 2004, her schedule was altered significantly, and she did not work at all during the week beginning 13 March (Doc. # 44-12, p. 32). The following week, however, she worked three days in between two days of requested medical leave (Doc. # 44-12, p. 36). During this week, on 22 March, Ayers requested a four-month leave of absence to care for her mother, who had been hospitalized (Doc. # 35-19, p. 2).

Ayers provided medical records from her Mother's hospital stay in March. The discharge paperwork, which her mother apparently dated 14 March, undercuts Ayers's contention that Wal-Mart precluded her from working that week (Doc. # 35-19, p. 6). She also testified that she had taken her mother to New Orleans during this time period (Def's Ex. A, p. 85).

20

implausible,[24] Ayers cannot identify which Wal-Mart employee, if any, knew of her EEOC charge; she speculates that such things are simply common knowledge (Def's Ex. A, pp. 202-03, 253-75).[25] Consequently, she not only fails to submit evidence allowing for an inference in her favor, she also cannot even testify based on personal knowledge about the possible motivation behind the alleged actions. Her retaliation claims should therefore be dismissed. *See Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (upholding dismissal of claim of retaliation in the form of a hostile work environment and constructive discharge when the plaintiff "did not establish" that the alleged wrongdoers "had knowledge of her EEOC charge"); *Gupta v. Fla. Bd. of Regents, et al.*, 212 F.3d 571, 590 (11th Cir. 2000) ("To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' *and* 'that the protected activity and the adverse action were not wholly unrelated.'" (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)) (emphasis added)).

The foundation for Ayers's entire case (excepting, of course, her claim related to the

---

[24]Ayers claims that Wal-Mart surreptitiously monitored and electronically eavesdropped on her cellular telephone calls and hid a listening device in a vase in her closet at home (Doc. # 29, p. 7; Def's Ex. A, pp. 25-29, 35-48). To retrieve the listening device, which Ayers admits she never saw, Wal-Mart apparently relied on one of Ayers's co-workers with whom she had been romantically involved and whose only possible reason for allegedly taking the vase, according to Ayers, was to remove the device (Def's Ex. A, pp. 35-36). "[I]t wasn't worth anything to him, and it was no value to him, and it was the only thing that he took out of the house that would house something or cover something because it had a lid on it." *Id.*

She also claims, *inter alia*, that Wal-Mart employees, their family members and friends visited the store while she was working the midnight shift and stared at her, pointing and laughing "like she was an animal at the zoo" (Doc. # 29, p. 4; Def's Ex. A, pp. 283-84).

[25]In fact, she is not even aware of whether the two people she claims threatened her were aware of her charge (Def's Ex. A., pp. 253-75).

February application, for which no substantive challenge has been raised) is as inarticulable as the vague, often incoherent answers she provided at her deposition. Ayers appears to have woven together a predicate for litigation from an ethereal fiber of irrational conclusions and questionable observations. Moreover, her inability to articulate virtually any details whatsoever to substantiate the claims she has made against her former employer and co-workers immerses her case in a sea of bad faith.

## IV.   CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Ayers's motion for summary judgment (Doc. # 35) be DENIED;

2.      Wal-Mart's motion for summary judgment be DENIED in part, specifically with respect to Ayers's claim that Wal-Mart unlawfully discriminated against her on the basis of age and race when it did not select her for an interview or promotion in connection with her February 2003 application;

3.      Wal-Mart's motion for summary judgment be GRANTED in all other respects; and

4.      Ayers's claim that Wal-Mart unlawfully discriminated against her on the basis of age and race when it did not select her for an interview or promotion in connection with her February 2003 application should be set for trial before the District Judge.

22

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 20th October, 2005. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. ***Nettles v. Wainwright***, 677 F.2d 404 (5th Cir. 1982). *See **Stein v. Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982). *See also **Bonner v. City of Prichard***, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 7th day of October, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE